NATIONAL PACKING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31668, 33971.   Promulgated November 27, 1931.

*J. A. Howell, Esq.*, and *J. H. Devine, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

GOODRICH: The first issue in this proceeding concerns the basis for computing depreciation for all the years here in question on the depreciable assets acquired by petitioner at the time of its organization. As of January 1, 1922, petitioner entered these assets on its books at values based on the appraisal made August 1, 1921. This appraisal, probably made for insurance purposes, purports to be based upon costs of reproduction, new, both for the buildings and for the machinery and equipment, and from these reproduction costs a " depreciated value " was computed. But, neither in the appraisal itself nor in the other evidence in the case, does it appear that the theoretical values set up in the appraisal are the fair market values of the various assets at that time, and therefore the appraisal is not determinative of those values. The appraisal was made at a time when, the evidence shows, there were other idle canneries in the vicinity, and only about a month after the assets appraised had sold at public sale where there was open bidding, at $100,000. The value of the assets when acquired by petitioner is a question of fact and can not be determined by this theoretical computation, even though the computation starts with a reproductive value based upon cost of similar property. Market value is a definite thing and it may have no particular relation to replacement cost, and is in no wise determined by it. See *Kinsman Transit Co.*, 1 B. T. A. 552; *Valley Steamship Co.*, 1 B. T. A. 1107; *Rockford Malleable Iron Works*, 2 B. T. A. 817; *Frost Manufacturing Co.*, 13 B. T. A. 802. On the whole record petitioner has failed to establish that the values at which the fixed assets were set up on its books were the fair market values thereof at the time it acquired them. The respondent's determination is sustained as to this issue.

We think it is clear that immediately after the transfer of the assets here in question to petitioner in exchange for its stock, the same persons who transferred the property were in control of the corporation, and therefore this case, as to the years 1924 and 1925, falls within section 204 (a) (8) of the Revenue Act of 1924, providing that the basis to the corporation shall be the same as it was to the

transferor. However, since we have sustained respondent's determination that the values of the fixed assets acquired by petitioner at the time of its organization were the same as the depreciated costs thereof to its predecessor, it is unnecesary to enlarge on this phase of the question.

In computing the allowance for depreciation on machinery and equipment respondent allowed 15 per centum per annum on old or secondhand items and 10 per centum per annum on items purchased by petitioner. There is no dispute concerning the rates of depreciation, the parties agreeing that these rates are adequate and reflect, as closely as may be, the depreciation sustained on these assets. However, respondent has treated as new machinery and equipment all purchases made by petitioner and computed depreciation thereon at the rate of 10 per centum, whereas the fact is that of such purchases at least 30 per centum consisted of secondhand items. The rate of 15 per centum should therefore be applied to 30 per centum of petitioner's purchases, and the rate of 10 per centum to the balance.

The remaining issue is the valuation of petitioner's inventory of January 1, 1921, which was substantially in excess of the closing inventory of the Kiesel Estate of December 31, 1921, although with some exceptions, the two inventories contained the same items. We have before us considerable testimony by competent witnesses bearing on the market prices as of January 1, 1922, of the items inventoried, corroborated to some extent by invoices and sales records of such items at about that time, and we can not but conclude that some of the values assigned by the inventory of December 31, 1921, are erroneous, and that the values assigned by petitioner's opening inventory are the market values of such goods at that time, with the following exceptions:

(1) The items of pickle stock, containers, and miscellaneous supplies which were described as " Spoiled," " Old," " Not Good," " Smoked," " N. G.," etc., in the closing inventory and there listed as without value should be held to have no value in the inventory of January 1, 1922. The testimony as to the values of these items is unsatisfactory. The witnesses, except Rudiger, had not seen these goods, and in testifying as to their value, presupposed the goods to be of standard quality and in good condition, which was not so. Rudiger, who made both inventories, was familiar with this stock. He had been examining, moving and reconditioning it and was in a better position than anyone else to determine its value. In making the closing inventory of the estate he determined that these goods were of no value, and, as any expenses added by petitioner to recondition and move the goods can not be included in determining

their value on January 1, 1922, we see no reason to disturb his first valuation.

(2) Some items appear in the inventory of January 1, 1922, which were not included in the inventory of December 31, 1921. These discrepancies have not been satisfactorily explained. If the goods were on hand on January 1, they should have been there the day before; if they were purchased after January 1, they have no place in the inventory as of that date. Such items should be deleted from the opening inventory.

*Judgment will be entered under Rule 50.*