Noel SMITH, Appellant,

v.

Ernest M. FLINN, Director of Internal Revenue, Appellee.

No. 16065.

United States Court of Appeals Eighth Circuit.

Dec. 5, 1958.

James B. Martin, Springfield, Ill. (Ensel, Martin, Jones & Blanchard, Springfield, Ill., and J. Andy Zenge, Jr., Canton, Mo., on the brief), for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Appellant is the owner of farms which are operated by tenants on a share crop basis. Appellee is the District Director of Internal Revenue. In the years 1955 and 1956 the Commissioner of Internal Revenue determined that there were deficiencies in appellant's income tax for the years 1948 through 1953 in the total amount of approximately $341,000.00 and penalties for the same years of approximately $160,000.00. Included among the penalties was one for civil fraud determined in each of the taxable years under Section 293(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b). Notices of the deficiencies and penalties were sent to the appellant. The appellant filed a timely petition with the Tax Court to redetermine. On August 9, 1957, the Director caused jeopardy assessments to be made against appellant and his wife in the total amount of approximately $375,000.00. Notice thereof and demand for payment were served on appellant on or about August 13, 1957.

On or about October 1, 1957, a revenue agent from the office of the Director met with appellant's tenants and instructed them to deliver the appellant's share of the crops in their possession to local grain elevators for sale and to send the proceeds to the Director at St. Louis. In years prior thereto the appellant had followed the practice of storing his share of the crops upon his farms and applying for Commodity Credit Corporation loans. (The question of whether or not he could obtain Commodity Credit Corporation loans on grain upon which the Director had a jeopardy lien we deem immaterial to this action.)

On October 21, 1957, the appellant filed a complaint in the District Court asking that the Director and his agents be enjoined from selling any of his property. Inter alia, he alleged that the Director's actions in seizing and selling a portion of his crops had resulted in a direct loss to him and that additional sales would result in further loss; that the Director's actions were illegal and arbitrary; that he, the appellant, had sustained irreparable injury, for which he had no adequate remedy at law; that substantial and irreparable injuries would be sustained as a result of the contemplated and threatened acts of the Director and his agents unless they were restrained by court order. On the same date appellant asked for and obtained a temporary restraining order enjoining the Director from selling or disposing of the seized property.

On April 7, 1958, a hearing was held in the District Court on appellant's motion for preliminary injunction. Following the hearing, the District Court dissolved the temporary restraining order, denied the request for an injunction and entered judgment for the Director. The evidence before the District Court (none was offered by the Director) disclosed that appellant had adequate storage facilities on his farms approved by Commodity Credit Corporation; that he and his tenants had stored sealed grain therein; that loans on such sealed grain had been made in prior years by the appellant and tenants; that losses would be suffered if the grains were sold and not stored; that the crops were not perishable; that the Director had never declared up to the date of the hearing that such crops, milo, soybeans and corn, were perishable; that the Director, through his agents, instructed the tenants to take appellant's grain to the elevator for sale and agreed to compensate them for such delivery; that the elevators were instructed to sell the appellant's grain and send the proceeds to the Director in St. Louis; that the market price of grains similar to those seized and sold by the Director had increased between the time of sale and the date of hearing.

In the state of the law prior to 1954, the Director, upon the making of a jeopardy assessment, had been able to immediately seize and sell property of a taxpayer, even though timely review had been sought in the Tax Court and no final determination thereof had been made. Obviously this could result in gross injustice. That situation was therefore changed by Congress in the enactment of the Internal Revenue Code of 1954. 26

U.S.C.A. § 6863(b)(3) provides that, "* * * property seized for the collection of the tax" under a jeopardy assessment "shall not be sold" if a timely petition is filed with the Tax Court. There are exceptions to the statutory prohibition as follows:

"(B) Exceptions.—Such property may be sold if—

"(i) the taxpayer consents to the sale,

"(ii) the Secretary or his delegate determines that the expenses of conservation and maintenance will greatly reduce the net proceeds, or

"(iii) the property is of the type described in section 6336."

26 U.S.C.A. § 6336 provides for the sale of perishable goods as follows:

"§ 6336. Sale of perishable goods

"If the Secretary or his delegate determines that any property seized is liable to perish or become greatly reduced in price or value by keeping, or that such property cannot be kept without great expense, he shall appraise the value of such property and—

"(1) Return to owner.—If the owner of the property can be readily found, the Secretary or his delegate shall give him notice of such determination of the appraised value of the property. The property shall be returned to the owner if, within such time as may be specified in the notice, the owner—

"(A) Pays to the Secretary or his delegate an amount equal to the appraised value, or

"(B) Gives bond in such form, with such sureties, and in such amount as the Secretary or his delegate shall prescribe, to pay the appraised amount at such time as the Secretary or his delegate determines to be appropriate in the circumstances.

"(2) Immediate sale.—If the owner does not pay such amount or furnish such bond in accordance with this section, the Secretary or his delegate shall as soon as practicable make public sale of the property in accordance with such regulations as may be prescribed by the Secretary or his delegate."

The record does not disclose, and the Director does not claim, that he complied with the provisions of § 6336, supra. While threatening through counsel to designate the seized crops as "perishable", (even though they consisted mainly of corn and milo) no such designation was made. No notice to the appellant of determination of the appraised value of the property was given, nor was appellant given an opportunity, as required, to pay the Director the amount of the appraised value had there been an appraisal or to give bond in such sum. Subsection (2) of § 6336 gives the Director the right to sell only "if the owner does not pay such amount or furnish such bond * * *". After the District Court dissolved its temporary restraining order and denied the granting of a permanent injunction, the Director sold the balance of the appellant's 1957 crops. The Director has also seized appellant's 1958 crop under jeopardy assessment. At the hearing before this court we were informed orally by counsel that part of the 1958 crop has also been sold by the Director and this, too, without proper compliance with the statute. The conclusion is justified that the balance of the 1958 crop will be so sold unless the Director be restrained.

We are forced to characterize the Director's actions in selling the appellant's 1957 crop and part of his 1958 crop as high-handed and unlawful. During the oral argument, counsel for the appellant informed this court that while this case was pending on appeal there was at least one, if not two instances of the Director causing sale of the appellant's property without complying with the statutory provisions. That assertion went undenied by the Director's counsel. In fact, the Director neither denies nor excuses his actions in selling the appellant's grain contrary to the statute and without any attempt at coming within the exceptions thereto. While his counsel, in oral argu-

ment, suggested that appellant's remedy might be an action for damages, his primary defense before the District Court and here is that there is a statutory bar to appellant's obtaining injunctive relief against him under these circumstances. The statute relied upon by the Director, without noting exceptions not material here, provides:

> "§ 7421.  *Prohibition of suits to restrain assessment or collection*
>
> "*(a) Tax.*—\* \* \* no suit for the purpose of restraining the assessor collection of any tax shall be maintained in any court."

■ In construing the foregoing section, the Supreme Court, in Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422, said:

> "Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became R.S., § 3224, this court in harmony with the rule generally followed in courts of equity held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden and so to interfere with and thwart the collection of revenues for the support of the government.  And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. \* \* \* This court has given effect to section 3224 in a number of cases. Snyder v. Marks, 109 U.S. 189, 191, 3 S.Ct. 157, 27 L.Ed. 901; Dodge v.

Osborn, 240 U.S. 118, 121, 36 S.Ct. 275, 60 L.Ed. 557; Dodge v. Brady, 240 U.S. 122, 36 S.Ct. 277, 60 L.Ed. 560.  *It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable.*  Hill v. Wallace, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822; Dodge v. Osborn, supra, 240 U.S. 121, 36 S.Ct. 275; Dodge v. Brady, supra.  Cf. Graham v. Du Pont, 262 U.S. 234, 257, 43 S.Ct. 567, 67 L.Ed. 965; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493."  (Emphasis supplied.)

■ What constitutes unusual and extraordinary circumstances so as to render the statute inapplicable is determined by no precise formula but is varied and each case must be decided upon its own peculiar underlying facts.  Courts have held that mere illegality of the exaction is not sufficient to make the statute inapplicable, Allen v. Shelton, 5 Cir., 1938, 96 F.2d 102, certiorari denied 305 U.S. 630, 59 S.Ct. 94, 83 L.Ed. 404; nor will hardship upon the taxpayer suffice to stay the statute and grant the injunction, Lloyd v. Patterson, 5 Cir., 1957, 242 F.2d 742; Robique v. Lambert, D.C., 114 F.Supp. 305, affirmed 5 Cir., 1954, 214 F.2d 3, certiorari denied 348 U.S. 915, 75 S.Ct. 297, 99 L.Ed. 718.  But the courts have on numerous occasions recognized, though dealing with situations coming within the statutory terms, that its provisions are inapplicable due to additional factors.  For example, in Yoke v. Mazzello, 4 Cir., 1953, 202 F.2d 508, where the Collector filed a distraint against taxpayer's property, his action in refusing bond with personal sureties owning unencumbered real estate worth in excess of twice the value of the distraint and in demanding that, in order to stay enforcement, taxpayers must deposit personal property or file surety bond of an approved bonding company constituted an abuse of discretion and justified issuance of an injunction against assessment; and in Hirst & Co. v. Gentsch, 6 Cir., 1943,

133 F.2d 247, 248, where it was shown that the taxes sought to be collected from appellant were probably not validly assessed taxes, and if collection was enforced by distraint the appellant would be ruined in its business and forced to close its mine, the court said:

> "In that event no remedy provided by the Internal Revenue Law would be adequate to compensate the appellant for its loss. There is thus presented a case under the authorities, as we read them, for an interposition of a court of equity, and the exercise of its extraordinary equity power."

For other cases where the courts have found that these unusual circumstances exist see: Allen v. Regents, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; Hill v. Wallace, 1922, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Dodge v. Brady, 1916, 240 U.S. 122, 36 S.Ct. 277, 60 L.Ed. 560; National Foundry Co. of New York v. Director of Int. Rev., 2 Cir., 1956, 229 F.2d 149; Holland v. Nix, 5 Cir., 1954, 214 F.2d 317; Shelton v. Gill, 4 Cir., 1953, 202 F.2d 503; Midwest Haulers v. Brady, 6 Cir., 1942, 128 F.2d 496.

We have here this situation: The Commissioner of Internal Revenue determined that there were deficiencies in appellant's income tax. Jeopardy assessments were issued. Appellant filed a timely petition with the Tax Court to redetermine the deficiencies and such matter is still pending and undetermined. In 1954 the Congress specifically provided by 28 U.S.C.A. § 6863(b)(3) that property so seized under a jeopardy assessment "shall not be sold" if timely petition is filed with the Tax Court. There are exceptions, none of which is applicable herein as the Director utterly failed to comply with the provisions which would justify use of the exceptions. He claims now that he could have declared the crops perishable and proceeded under the provisions of 26 U.S.C.A. § 6336, supra. The point is that even if, considering the commodities involved, he could have done so, he did not, and even if he had, the appellant would nevertheless have been entitled to notice of the appraised value, a reasonable opportunity to pay such amount or of giving a bond with sureties to prohibit the immediate sale of the seized grain.

The hearing in District Court established that the price of the commodities seized and sold was considerably higher at the time of the hearing than at the time of their unlawful sale by the Director. While the appellant's 1957 crop has been sold and any question as to that year's crop apparently is moot, the attorneys advised the court at the time of the hearing that this was not true as to the 1958 crop. If past actions are any indication of the future, there is every reason to believe that if the appellant is denied relief here the Director will proceed with his unlawful actions and sell the 1958 crop in utter disregard of Congressional mandate.

We think the foregoing state of affairs reflects those "special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence * * *" referred to by the Supreme Court in Miller v. Standard Nut Margarine Co., supra. It seems perfectly obvious that the Director herein has, by his high-handed method of seizure and sale, attempted to completely thwart the will of Congress which provided in 1954 that the property so seized "shall not be sold." To deny relief here is to tell the Director that he need pay no attention to an Act of Congress specifically prohibiting him from selling property seized under a jeopardy assessment if the question of deficiency is still pending in the Tax Court.

Additionally, it may be stated that by the granting of an injunction we are in no way "restraining the assessment or collection of any tax". The Director is merely prohibited from making a sale of seized property in contravention of Congressional edict. The statute passed by Congress in 1954 specifically sets forth what the Director must do if the situation requires an immediate sale. Appellant is entitled to have the Director abide by the provisions of that statute. We think it clear that the Director's actions are il-

legal and that "special and extraordinary circumstances" justify granting the relief applied for.

This case is remanded to the District Court with directions to enter an injunction restraining the appellee, his officers, agents, employees and servants and each of them from selling any of the appellant's property contrary to the provisions of 26 U.S.C.A. § 6863(b)(3). It is so ordered.