MELVIN WILLIAMS AND MARY WILLIAMS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MELVIN WILLIAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 28141-87, 28142-87.     Filed May 9, 1989.

*Joseph L. Gibson,* for the petitioners.
*Herbert A. Seidman,* for the respondent.

COLVIN, *Judge:* This case of first impression is before the Court on petitioners' motion to review the respondent's determination to sell seized property. The issue for decision is the propriety of respondent's determination to sell jewelry and furs previously seized from petitioners. This is the first motion received by the Tax Court to stay the sale of seized property under section 6863(b)(3)(C),[1] enacted November 10, 1988, effective February 8, 1989.

As discussed below, if a motion to review respondent's decision to sell is granted, the Court may enter an order to stay the sale by the Internal Revenue Service (IRS). An order to stay the sale may by its terms bar or delay the sale, and can be compared to an injunction. See Rule 65, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

### 1. *Petitioners' Pending Tax Court Cases*

Petitioners filed joint tax returns for taxable years 1980-1984.

By notices dated May 22, 1987, respondent determined deficiencies and additions to petitioners' joint Federal income taxes as follows:

| | | Additions to tax | |
|---|---|---|---|
| *TYE* | *Deficiency* | Sec. 6653(b)(1), (b)(2)* | *Sec. 6661* |
| Docket No. 28141-87: | | | |
| Dec. 31, 1981 | $70,410.73 | $36,098.36 | |
| Dec. 31, 1982 | 58,258.27 | 29,129.13 | $14,654.57 |
| Dec. 31, 1983 | 114,944.19 | 57,472.10 | 28,736.05 |
| Docket No. 28142-87: | | | |
| Dec. 31, 1980 | 6,075.49 | 3,037.74 | |
| Dec. 31, 1984 | 126,565.53 | 62,282.76 | 31,641.38 |

*Respondent failed to distinguish between the secs. 6653(b), 6653(b)(1) and (b)(2) additions.

[1] All section references are to the Internal Revenue Code of 1986 as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.

Docket Nos. 28141-87 and 28142-87 have been consolidated by separate order for purposes of trial, briefing, and opinion, including for purposes of this motion. Rule 141(a).

At the time the petitions were filed, petitioner Melvin Williams was an inmate at the Federal penitentiary at Lewisburg, Pennsylvania, and petitioner Mary Williams resided in Baltimore, Maryland.

Petitioner Melvin Williams filed a motion to proceed in forma pauperis on October 24, 1988, in which he stated that neither he nor his family have sufficient funds to pay the cost (approximately $3,000) of his transportation and housing to return him to Baltimore, Maryland, for trial.

2. *Seizure of and Determination to Sell Petitioners' Property*

On December 5, 1984, the Drug Enforcement Administration (DEA) seized various items of personal property belonging to petitioners. The principal items seized were furs and jewelry. The furs and jewelry were appraised in January, 1985.

In 1987, the IRS made a jeopardy assessment under section 6861 against petitioners and subsequently served a levy on DEA for any of petitioners' assets. On September 29, 1987, DEA gave numerous pieces of jewelry and furs to the IRS which they had previously seized from petitioners. The items were appraised at the request of the Government. As a result of the jeopardy assessment, two statutory notices of deficiency were issued to petitioners on May 22, 1987. Petitioners filed two timely petitions with the Tax Court.

Respondent sent petitioners a letter, dated February 2, 1989, and an IRS Form 4585, Minimum Bid Worksheet (worksheet). The letter included a discussion of the minimum bid price "of property seized from you," and advised petitioners that they could request a professional appraiser to reevaluate the price if petitioners disagreed with the minimum bid price. The "Remarks" section of the worksheet provided, "The jewerly [sic] have been depreciating in value everyday. Some of the jewerly [sic] are the gaudy type and persinalize [sic]." The worksheet did not mention furs. The worksheet stated that the estimated expenses of the sale are $7,000.

The letter also stated, "If we do not hear from you within 5 days from the date shown above (February 2), we will assume you agree with the established minimum bid price." The envelope in which the letter and worksheet were mailed bore a postmark date of February 7, 1989. The postal claim check attached to the envelope indicates first notice on February 9, second notice on February 14, and return on February 24. In their memorandum in support of their motion for review, petitioners allege that actual delivery was made on February 10, 1989. There is no indication that petitioners submitted any appraisals to respondent at that time.

Apparently sometime in late January or early February, 1989, the IRS scheduled a sale by auction of the jewelry and furs. The auction was scheduled for 7:00 p.m. on March 1, 1989.

Respondent's memorandum, which we treat as a response to petitioners' motion, states that the property was scheduled for sale because of the "continuous and substantial decline in value" shown by respondent's appraisals. We infer from this that respondent determined that the property is liable to become greatly reduced in price or value. There is no indication that respondent determined that the property was liable to perish or could not be kept without great expense.

3. *Petitioners' Motion to Review the Determination to Sell Seized Property*

Late on Tuesday afternoon, February 28, 1989, the day before the scheduled sale, counsel for petitioners delivered to the Tax Court and to respondent's counsel a motion to review respondent's determination to sell the seized property. Petitioners asserted that the jewelry and furs were not wasting assets and that there would be no reduction in value of the seized property if this Court were to grant petitioners' motion.

Petitioners' motion included the following allegations and points:

1. The motion was brought under section 6863(b)(3)(C).

2. Property had been seized from petitioners on December 5, 1984, and has been in the Government's possession since then.

3. The property seized was furs and jewelry.

4. Grounds for the motion were that none of the exceptions of section 6863(b)(3)(B) are applicable.

5. Further grounds for the motion are that the jewelry and furs are not losing value.

6. This Court has jurisdiction in that petitioners filed timely petitions with the Tax Court with respect to two notices of deficiency.

7. The seized property was the subject of a jeopardy assessment.

The motion also alleged that petitioners' counsel had advised respondent's officer of petitioners' "wishing to find some way to have a family member or friend redeem the property" at the minimum bid price, but that "This the officer refused to do." Petitioners' counsel did not allege that he had offered payment or a bond.

The motion also included a certificate of service to respondent's counsel, and the address and phone number of petitioners' counsel.

On Wednesday, March 1, 1989, the Court held two conference calls with counsel for petitioners and respondent. In the first conference call, at 11:00 a.m., petitioners' counsel stated arguments for granting the motion and respondent's counsel stated arguments for denying the motion.

In the second conference call, at 2:00 p.m., the Court indicated the terms of the Court order that was issued in response to petitioners' motion.

The order issued by the Court on March 1, 1989, provided as follows:

Upon due consideration of petitioners' motion for stay of sale of seized property and pursuant to the conference call between the Court and the parties on this date, the Court has concluded that the motion raises several legal and factual questions in dispute between the parties. The Court believes a 30-day stay would enable the Court to properly consider whether the stay should extend beyond April 1, 1989. Accordingly, it is

ORDERED that petitioners' motion is granted in that the sale of petitioners' property in the possession of respondent, scheduled for March 1, 1989, is stayed until not before April 1, 1989. It is further

ORDERED that the parties shall provide, on or before March 15, 1989, written memoranda with respect to whether the stay should be extended by this Court's order beyond April 1, 1989.

The Court later extended the temporary stay through May 31, 1989.[2]

The auction previously scheduled for that evening was cancelled as a result of the Court order.

The parties filed written memoranda with the Court. Both parties attached copies of appraisals as exhibits to their respective memoranda. Neither party requested a hearing.

## 4. *The Appraisals*

### a. *Jewelry*

i. *Respondent's Appraisals.* At DEA's request the jewelry was appraised by Dahne & Weinstein, jewelers and appraisers, on January 7, 1985. The aggregate value of the jewelry was said to be $98,325.

The jewelry was again appraised at DEA's request by Dahne & Weinstein on October 7, 1987. The aggregate value was said to be $69,230. Nine items increased in value, 12 did not change, and 37 decreased in value.

The IRS employed Gary Prince of Prince Jewelry Co. to appraise the jewelry. Mr. Prince valued the jewelry as of January 9, 1989, at $56,283. It is difficult to compare estimates for each item on this appraisal with the two previous appraisals because many of the items are described differently.

ii. *Petitioners' Appraisal.* On March 15, 1989, J. Scott Fullagar of the Albert S. Smyth Co., appraised the jewelry at petitioners' request. The aggregate resale value was estimated to be $67,946. Petitioners' appraisal also said, "barring unforeseen collapses in the gold and precious stone markets, that these resale prices should remain reasonable for the next six months." Respondent's appraisals did not make any statement about values after the date of the appraisals.

---

[2]By separate order, the temporary stay expires May 9, 1989, the filing date of this opinion.

On Apr. 27, 1989, respondent filed a motion for order on petitioners' motion for stay of sale of seized property. The motion is mooted by release of this opinion. Although the motion included further argument for respondent's position, we did not consider it, nor did we order a response thereto from petitioners.

b. *Furs*

i. *Respondent's Appraisals.* At IRS' request the furs were appraised on January 11, 1985, by David Tarlow, a Baltimore furrier. He placed the aggregate replacement cost value at $31,900.

The furs were again appraised by David Tarlow on October 7, 1987, at IRS's request. The aggregate resale value was placed at $13,000. The 1985 fur appraisal, although by the same appraiser, was based on replacement cost, a different method of valuation than that used for the 1987 appraisal. The 1987 valuation apparently does not include several items that were included in the 1985 appraisal. Items were included in the 1985 appraisal, estimated to be worth $1,100, that were not included in the 1987 appraisal.

ii. *Petitioners' Appraisal.* Petitioners submitted no appraisal or other evidence relating to the furs.

c. *Summary of Appraisals*

A summary of the jewelry and fur appraisals appears at 928.

d. *Storage and Maintenance Costs*

Respondent made no claim in its memorandum that storage or maintenance costs were a factor in its determination to sell the property.

OPINION

1. *Introduction*

The Tax Court's jurisdiction to stay sales of seized property became effective on February 8, 1989. This is the first motion received by the Tax Court in which a party seeks review of respondent's determination to sell seized property under section 6863(b)(3)(C).

The Technical and Miscellaneous Revenue Act of 1988 (TAMRA), 102 Stat. 3750, was enacted on November 10, 1988. Section 6245 of TAMRA amended section 6863(b) and granted jurisdiction to the Tax Court to review determinations by the IRS to sell property under section 6863(b)(3)(B)

if a Tax Court petition has been filed under section 6213(a)to redetermine a deficiency the collection of which is otherwise stayed by virtue of section 6863(b)(3)(A).

Section 6863(b)(3)(C), as added by TAMRA, sec. 6245(a), provides as follows:

SEC. 6863. STAY OF COLLECTION OF JEOPARDY ASSESSMENTS.

      *      *      *      *      *      *      *

(b) FURTHER CONDITIONS IN CASE OF INCOME, ESTATE, OR GIFT TAXES.—In the case of taxes subject to the jurisdiction of the Tax Court—

      *      *      *      *      *      *      *

(3) STAY OF SALE OF SEIZED PROPERTY PENDING TAX COURT DECISION.—

      *      *      *      *      *      *      *

(C) REVIEW BY TAX COURT.—If, but for the application of subparagraph (B), a sale would be prohibited by subparagraph (A)(iii), then the Tax Court shall have jurisdiction to review the Secretary's determination under subparagraph (B) that the property may be sold. Such review may be commenced upon motion by either the Secretary or the taxpayer. An order of the Tax Court disposing of a motion under this paragraph shall be reviewable in the same manner as a decision of the Tax Court.

The House version of TAMRA included no provisions for Tax Court review under section 6863. The Conference Committee Report adopted the Senate Finance Committee Report which stated:

The Tax Court is granted jurisdiction during the pendency of proceedings before it to review the IRS's determination to sell seized property under one of the present-law exceptions to the stay of sale.

The provision is effective on the 90th day after the date of enactment. [H. Rept. 100-1104, at 232 (Conf.)(1988).]

The Conference Agreement further provides:

The conference agreement follows the Senate Amendment. [H. Rept. 100-1104, at 232 (Conf.)(1988).]

The amendment to section 6863(b) became effective 90 days after the enactment of TAMRA, on February 8, 1989.

**Summary of Jewelry Appraisals**

| Provided by | Date | Appraiser | Method | Total value | Estimated duration for appraisal |
|---|---|---|---|---|---|
| Respondent (for DEA) | Jan. 7, 1985 | Dahne & Weinstein | Current retail value | $98,325 | --- |
| Respondent (for DEA) | Oct. 7, 1987 | Dahne & Weinstein | Current retail value | 69,230 | --- |
| Respondent (for IRS) | Jan. 9, 1989 | Prince | Resale value | 56,283 | --- |
| Petitioners | Mar. 15, 1989 | Fullagar | Resale value | 67,946 | 6 months |

**Summary of Fur Appraisals**

| Provided by | Date | Appraiser | Method | Total value | Estimated duration for appraisal |
|---|---|---|---|---|---|
| Respondent (for DEA) | Jan. 11, 1985 | Tarlow | Replacement cost at present prevailing market rates | 31,900 | --- |
| Respondent (for IRS) | Oct. 7, 1987 | Tarlow | Resale value | 13,000 | --- |
| Petitioners | (---) | | | | |

## 2. *Stay of Sales of Seized Property Seized Pursuant to a Jeopardy or Termination Assessment*

If a statutory notice of deficiency has been sent to a taxpayer and a timely petition is filed with the Tax Court, no assessment of a deficiency may be made until the decision of the Tax Court becomes final. Sec. 6213(a).

Sections 6851, 6852, and 6861 provide exceptions to the nonassessment rule and authorize respondent to make termination and jeopardy assessments before or during the pendency of a case in the Tax Court if it finds that ordinary assessment or collection is threatened.

Respondent may determine to sell property seized because of a jeopardy or termination assessment. Secs. 6335 and 6336.

Under section 6335(b), respondent must give notice of a proposed sale in at least two newspapers published or circulated in the county where the seizure was made. The sale must be held not less than 10 nor more than 40 days after public notice is given. Sec. 6335(d). Respondent must also establish the minimum bid price. Sec. 6335(e).

Under section 6337, the property must be returned to the taxpayer if the taxpayer pays the amounts determined to be owing.

The Secretary has general authority to collect taxes after assessment. Sec. 6331.

Under section 6863(a), collection of a jeopardy or termination assessment may be stayed by filing a bond with respondent. Collection will be stayed up to the amount of the bond.

Under section 6863(b)(3)(A), property seized under a jeopardy or termination assessment generally may not be sold pending Court review (until the decision of the Tax Court becomes final, or until the expiration of time under section 6213 to file a petition).

Section 6863(b)(3)(B) provides several exceptions to the rule barring sale:

a. If the taxpayer consents;

b. If the Secretary determines that the expenses of conservation and maintenance will greatly reduce the net proceeds; or

c. If the property is of the type described in section 6336.[3] Property described in section 6336 is property which—

1. Is liable to perish or to become greatly reduced in price or value by keeping, or

2. Cannot be kept without great expense.

Section 6336 also requires respondent—

1. To appraise the property; and

2. If the owner can be readily found, to notify him of the appraised value, and to give him an opportunity to reclaim or post bond for the property based on the appraised price.

Property shall be returned to its owner if, within the time specified in the notice, the owner pays the appraised amount or furnishes an acceptable bond. Section 6336 also authorizes respondent to immediately make public sale of the property if the owner fails to pay the amount or furnish a bond as required in the notice of sale.

As discussed above, section 6863(b)(3)(C) gives jurisdiction to this Court to review determinations by the Secretary to sell seized property under the exceptions described in section 6336. A motion to review a determination may be made by the taxpayer or respondent. Sec. 6863(b)(3)(C).

Except for "extraordinary and exceptional circumstances," judicial review in other courts under section 6336 has been negligible due to the anti-injunction provisions of section 7421(a). See, e.g., *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 509 (1932); *Hill v. Wallace,* 259 U.S. 44, 62 (1922); *Smith v. Flinn,* 261 F.2d 781, 784 (8th Cir. 1958), modified and rehearing denied 264 F.2d 523 (8th Cir. 1959).

---

[3]Sec. 6336 provides, in part:

If the Secretary determines that any property seized is liable to perish or become greatly reduced in price or value by keeping or that such property cannot be kept without great expense, he shall appraise the value of such property and—

(1) RETURN TO OWNER.—If the owner of the property can be readily found, the Secretary shall give him notice of such determination of the appraised value of the property. The property shall be returned to the owner if, within such time as may be specified in the notice the owner—

(A) Pays to the Secretary an amount equal to the appraised value, or

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) IMMEDIATE SALE.—If the owner does not pay such amount \* \* \*, the Secretary shall as soon as practicable make public sale of the property.

### 3. *The Court Has Jurisdiction to Act on the Motion*

Petitioners alleged that the Court had jurisdiction over the motion brought under section 6863(b)(3)(C) in their original submission to the Court. Respondent does not object to the Court's jurisdiction.

There are five requirements for jurisdiction:

a. An assessment must have been made under section 6851 (Termination Assessments), section 6852 (Termination Assessments in Case of Flagrant Political Expenditures of Section 501(c)(3) Organizations), or section 6861 (Jeopardy Assessments of Income, Estate, Gift, and Certain Excise Taxes) and property seized, section 6863(b)(3)(A).

b. A timely petition must have been filed with the Tax Court (whether before or after the making of such assessment), section 6863(b)(3)(A)(iii), before the expiration of the period during which the assessment of the deficiency would be prohibited if neither sections 6851(a), 6852(a), nor 6861(a) were applicable.

c. Respondent has determined that one of the exceptions to the general prohibition against sale provided in section 6863(b)(3)(B) applies, i.e., (1) the taxpayer consents to the sale, or (2) respondent determines that the expenses of conservation and maintenance will greatly reduce the net proceeds, or (3) the property is of the type described in section 6336 (Sale of Perishable Goods). See pp. *supra.*

d. A proper motion must be filed. And,

e. A proper party must file the motion, i.e., the taxpayer or respondent.

In the present case, an assessment was made under section 6861, timely petitions were filed, respondent determined that the property is of the type described in section 6336, and the matter was brought before the Court on motion by petitioners. Thus, we have jurisdiction to review respondent's determination to sell the property.

### 4. *Special Circumstances Warrant That We Consider Petitioners' Motion*

Petitioners' motion to stay the sale of seized property was filed 1 day before the scheduled sale. We believe the

newness of the law justified our consideration of petitioners' last-minute filing in this case.

However, last-minute filing effectively prevents orderly review of legal and factual issues raised by the parties unless a temporary stay is ordered. Accordingly, eleventh-hour filing will not be allowed by the Court in the future absent special circumstances, such as late notice to petitioner.

### 5. *The Court May Issue a Temporary Stay if Appropriate*

When petitioners' motion was filed, the Court believed it merited consideration. However, there was not time to properly consider it before the scheduled sale. Thus, the Court considered use of a temporary stay. A temporary stay would preserve the rights of the parties so that the merits could be properly presented to and reviewed by the Court.

We hold that the Court has authority to issue a temporary stay in appropriate cases, and that this is an appropriate case.

Section 6863(b)(3)(C) grants the Tax Court jurisdiction during the pendency of proceedings before it to review the IRS's determination to sell property seized pursuant to a jeopardy or termination assessment. We believe this necessarily includes the authority to issue a temporary stay if appropriate. It is essential to the exercise of our authority to review a determination to sell seized property that we be able to stay a sale temporarily.

We believe the authority to order a temporary stay pending review was important to the exercise of our jurisdiction here because it enabled the parties to present appraisals and written arguments on factual or legal issues presented by the motion to stay.

Courts have the inherent authority to issue such orders as they deem necessary and prudent to achieve the "orderly and expeditious disposition of cases" in their jurisdiction. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-765 (1980); *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-631 (1962). For example, the Tax Court has the power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency,

and deter frivolous filings. *Clark v. Commissioner,* 744 F.2d 1447 (10th Cir. 1984). This Court's powers also include, for example, the power: (1) To consider new issues and new theories in support of an adjustment, *Seligman v. Commissioner,* 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986); (2) to appoint a tax matters partner, *Computer Programs Lambda, Ltd. v. Commissioner,* 90 T.C. 1124, 1127 (1988); (3) to vacate a void decision, *Abatti v. Commissioner,* 86 T.C. 1319 (1986), affd. 859 F.2d 115 (9th Cir. 1988); *Brannon's of Shawnee, Inc. v. Commissioner,* 71 T.C. 108, 112 (1978); and (4) generally to protect its own process from abuse, oppression, and injustice and to enforce and vindicate its lawful process, *Griffith v. Commissioner,* T.C. Memo. 1988-123, and *Stojalowsky v. Commissioner,* T.C. Memo. 1983-236. Accordingly, we hold that the granting of the temporary stay of sale here was a proper exercise of this Court's jurisdiction.

We next turn to whether issuance of a temporary stay was appropriate under these circumstances.

Circumstances require that the Court has broad discretion in deciding whether to stay sales temporarily. The purpose of a temporary stay is not to resolve the matter on the merits. Instead it is to preserve the issue so it can be properly reviewed.

Temporary stays will not be granted automatically. We will be selective as warranted by the circumstances. To do otherwise would fail to recognize that delayed sales would sometimes cost the public or the taxpayer significantly, either because the property is losing value or is expensive to maintain.

Neither party submitted affidavits or appraisals in connection with consideration of this temporary stay. We recognize that it was not possible for the parties to provide affidavits or other documentation in the time available before deciding whether to grant a temporary stay. Thus, we decided whether it was appropriate to grant this temporary stay based on the information reasonably available to the Court.

The temporary stay was granted here because the Court believed that the motion was sufficiently justified to warrant preserving the rights of the parties. This gave the

parties more time to prepare the merits of the motion. Based on the conference call with both counsel on March 1, we believed petitioners' claim that the jewelry and furs would not become greatly reduced in value during the period of the temporary stay more likely to be true than respondent's claim to the contrary. We were also influenced by the substantial length of time the property had been held by respondent (and DEA previously) prior to the determination to sell.

## 6. *Burden of Proof*

### *Introduction*

Section 6863(b)(3)(C) is silent as to the burden of proof for a motion to stay sales of seized property. At present, there is no Tax Court Rule that specifically addresses a proceeding brought under section 6863(b)(3)(C). Under section 7453, the Tax Court is given the power to establish rules of practice and procedure for its proceedings. Tax Court Rule 142(a) provides that petitioner generally bears the burden of proof, except as otherwise provided by statute or determined by the Court.

Here, we must decide whether to follow the usual rule that petitioners bear the burden of proof, or whether special circumstances warrant that we provide otherwise.

At the outset, we note that a decision on a motion to stay a sale of seized property does not decide tax liability. Instead, it decides whether respondent can sell property which petitioner continues to own. The property is held by respondent as security for payment of tax which will be owing if respondent prevails in the pending litigation.

A proceeding to review respondent's determination to sell seized property has many unique characteristics. Among these are:

(1) The motions will usually arise in a time-sensitive environment.

(2) Respondent has physical possession or control of the property.

(3) Respondent initiates the sale of the property.

(4) Respondent controls the scheduling and conditions of the sale.

(5) Respondent has had the opportunity to develop documentation to support the determination to sell the property.

(6) Petitioner may have had very little opportunity to develop evidence.[4]

We recognize that there is significant public interest in permitting sales in appropriate circumstances. That is, if the property loses value, or if maintenance expenses of the property are large in relation to its value, the public interest in collecting tax is frustrated. Further, we believe that respondent's role as property manager is entitled to some deference.

In light of these circumstances, we hold that—

(1) If movant seeks a stay, movant must first request a stay on grounds that are plausible and believable.

(2) If movant does this, respondent must bear the burden of proving by a preponderance of the evidence that the determination to sell seized property was correct.

## Initial Showing By Movant

The movant must first make a request for a stay on grounds that are plausible and believable. Frivolous or dilatory motions will not be considered.

Here we conclude that petitioners successfully made this initial showing.

## Burden of Proof on Respondent

If movant meets this preliminary requirement, respondent must bear the burden of proving by a preponderance of the evidence that the determination to sell seized property was correct. We believe the special circumstances present with motions to review a determination to sell seized property make this appropriate.

We recognize that, in many proposed sales of seized property, respondent may have had little time to determine to sell the property. In these instances evidence available to both parties may be significantly restricted compared to what would be available if there were more time. The Court is aware of the obstacles facing parties in these cases and

---

[4]See, e.g., *Omnibus Financial Corp. v. United States,* 566 F.2d 1097 (9th Cir. 1977) (notice provided 1 day before sale).

will decide motions to stay sales of seized property based on the facts and record reasonably available to it at the time. However, if respondent has unreasonably delayed scheduling or giving petitioner notice of the sale, it can thwart the parties' opportunity to adequately prepare for the motion. If this occurs, we will not allow respondent to claim lack of opportunity to develop its case. Similarly, the movant may not profit from its own delay. That is, where there is significant advance notice of the sale but movant unreasonably delays seeking a stay, the Court will not excuse lack of support for movant's position.

Next, we discuss why we place on respondent the burden of showing why the determination to sell seized property is correct.

Generally, a notice of deficiency is presumed correct, and petitioner bears the burden of disproving respondent's determination of his tax liability, *Welch v. Helvering*, 290 U.S. 111 (1933). We believe placing the burden on respondent for motions to stay sales of seized property is fully consistent with this.

One reason given for placing the burden of proof on petitioner is that the facts and figures on which tax liability rests are peculiarly within the taxpayer's knowledge. *Campbell v. United States*, 365 U.S. 85, 96 (1961); *Church of Scientology of California v. Commissioner*, 83 T.C. 381, 468 (1984). The opposite is true in the instant situation. Here, respondent has possession of the property, and the greater ability to make a showing as to the correctness of a determination to sell it. Respondent also controls the timing and conditions of the sale.

Another reason given for petitioner's bearing the burden of proof for tax deficiencies is that "taxes are the life-blood of government, and their prompt and certain availability is an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). But here, respondent is already holding property as security for a tax liability determined to be owing. The issue is whether respondent may sell petitioners' property.

In deciding that respondent must show that the determination was correct, we do not believe we are limited to acting only where there was abuse of discretion by respondent.

In adding section 6863(b)(3)(C) to the Code, Congress specifically called on this Court to consider taxpayers' motions to review respondent's determination to sell seized property. Congress did not impose a restrictive standard of review in the statute. Rather, the Court was simply authorized to "review" the Commissioner's determination to sell seized property.

In determining whether to sell seized property, the Commissioner is provided little discretion, but rather a specific, objective standard under section 6863(b)(3)(B). A determination that this standard is met lends itself to Court review.

Section 6863(b)(3)(C) imposes no limitations on the standard of review of determinations by respondent to sell property, and it does not limit the Court to a review of the correctness of respondent's determination, unlike section 7429(b)(3)(A)(i) (review of Jeopardy Levy or Assessment Procedures) and former section 7477 (repealed by section 131(e)(1) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 664) (declarations as to whether a determination by respondent regarding a section 367(a) exchange was reasonable). See *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896, 908-909 (1979).

7. *Court Not Limited to Review of the Administrative Record*

The facts before the Court consist primarily of various appraisals. We must decide whether we may properly consider petitioners' appraisal which was attached to their written memoranda filed in response to the temporary stay order. We hold we can also consider affidavits, appraisals, or other appropriate information. Accordingly, we choose to consider petitioners' appraisal of the jewelry. Petitioners did not provide an appraisal of the furs.

8. *Relevance and Weight of Appraisals Stating Past and Current Values*

We next consider whether the Government's appraisals of the fur and jewelry, taken between 1985 and 1989, are relevant in determining under section 6336 whether the

value of the property is "liable to become greatly reduced in value." If the appraisals are relevant, a related issue for decision is what weight they should have.

Rule 401, Federal Rules of Evidence, applicable in the Court pursuant to Rule 143 * * * , and section 7453, defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[*Armco, Inc. v. Commissioner*, 87 T.C. 865, 867 (1986).]

The courts have interpreted the language "liable to become greatly reduced in value" to mean "likely" to become greatly reduced in value. See, e.g., *United States v. Mellon Bank*, 521 F.2d 708, 712 n. 15 (3d Cir. 1975); *Hohman v. United States*, 535 F. Supp. 1218, 1219 n. 6 (D.D.C. 1982). We take this to mean that a great loss in value is likely to occur in the foreseeable future. Thus, likelihood that property is liable to become greatly reduced in value is not necessarily established by appraisals of value from earlier dates. Estimates which provide reasonable grounds for predicting future value would mean much more in determining if the property is liable to become greatly reduced in value. No such evidence or data was provided by respondent. However, the appraisals offered by respondent in this case may be given some weight in determining whether the property is likely to become greatly reduced in value.

## 9. *Stay of Sales of Some Property*

We believe that inherent in our authority to administer our jurisdiction under section 6863(b)(3)(C) is the authority to stay the sale of some assets but not others if the record so indicates. In this case we stay the sale of the jewelry to the extent discussed below, but we do not further stay the sale of the furs.

## 10. *Stay of Sale of Jewelry for 6 Months*

Petitioners' appraisal included the best information of prospective value of the jewelry in that it estimated that the jewelry will not decrease in value for at least 6 months. We are unconvinced that respondent appropriately determined that the future value of the jewelry is likely to

become greatly diminished. We believe it appropriate to tailor the order to the information available to the Court. Accordingly, we will order a stay in the sale of the jewelry for approximately 6 months.

## 11. *Stay of Sale of Furs Denied*

Respondent submitted a 1987 appraisal of the furs indicating a replacement cost[5] of $31,900 and a 1989 appraisal showing a resale value[6] of $13,000. Respondent did not explain the difference between the two different methods of valuing[7] the furs, i.e., the replacement cost method and the resale value method. Replacement cost is generally not favored for tax purposes in arriving at fair market valuations. *Ingram-Richardson, Inc. v. Commissioner*, T.C. Memo. 1972-157; *National Packing Corp. v. Commissioner*, 24 B.T.A. 952, 956 (1931); and *Berg v. United States*, 167 F. Supp. 756 (W.D. Wis. 1958). Indeed, in a case to determine the fair market value of automotive equipment distributed in a corporate liquidation to the taxpayers, this Court noted that replacement cost while "some indication of fair market value, is by no means conclusive" and has been held to be "of questionable weight as valuation evidence." *Carty v. Commissioner*, 38 T.C. 46, 66 (1962). In *Carty*, the taxpayers valued the automotive equipment using a current replacement cost adjusted by actual depreciation and failed to carry their burden of showing that the equipment had a value in excess of that determined by respondent. See *Phildelphia Steel and Iron Corp. v. Commissioner*, T.C. Memo. 1964-93, affd. per

---

[5]The replacement cost value of an item of property is equal to the cost that would be incurred in acquiring an acceptable substitute property. 1 J. Bonbright, Valuation of Property, 152 (1937). The replacement cost of used property, such as petitioners' jewelry, is the cost of replacing such used property with identical or equivalent property which is in substantially the same condition as the original. Equivalent property is that which has the same value as the original, or gives the same benefits of ownership, but which is not identical with it. A general principle of valuation states that the cost of replacement equals the upper limit of value of the property. H. Babcock, Appraisal Principles and Procedures, pars. 541, 750, 752 (1980).

[6]Respondent's memorandum uses this term interchangeably with fair market value.

[7]Sales need not achieve a fair market value price for property, but the sale price may not be unreasonably low. *Citibank, N.A. v. Data Lease Financial Corp.*, 645 F.2d 333 (5th Cir. 1981); *Smith v. Juhan*, 311 F.2d 670, 672 (10th Cir. 1962); *Ringer v. Basile*, 645 F. Supp. 1517 (D. Colo. 1986); *Crump v. United States*, 66-1 USTC par. 9308, 17 AFTR 2d 637 (N.D. Ga. 1966); *Miracle-Span Corp. v. United States*, 82-1 USTC par. 9365, 50 AFTR 2d 82-5334 (D. S.D. 1982).

curiam 344 F.2d 964 (3d Cir. 1965); and *National Packing Corp. v. Commissioner,* 24 B.T.A. 952, 956 (1931). In all of these cases the taxpayers used replacement cost but failed to carry their burden of overcoming the "presumptive correctness of the Commissioner's determination" of value. Nonetheless, the Court in each case apparently gave some weight to an appraisal based on replacement cost.

Petitioners did not provide any evidence regarding the furs. They evidently could have done so, as shown by their submission of a jewelry appraisal.

On balance, we find that respondent has borne the burden of proving that the determination to sell the seized furs was correct. We do not further stay the sale of the furs.

For the foregoing reasons,

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, HAMBLEN, COHEN, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.,* agree with this opinion.