DONALD J. MIRAVALLE AND LILLIAN JOY MIRAVALLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9870–91, 7251–93, 10686–94.  Filed July 31, 1995.

Donald J. Miravalle and Lillian Joy Miravalle, pro se.
*Howard P. Levine,* for respondent.

## OPINION

GERBER, *Judge:* Petitioners moved to stay respondent's sale of property. We consider whether the provisions of section 6863[1] would grant us jurisdiction to stay the sale.

## *Background*

Respondent made jeopardy assessments of and issued a notice of deficiency for deficiencies in petitioners' income tax for 1984, 1985, and 1986 tax years. Shortly after making the jeopardy assessments in December 1990, respondent seized petitioners' real property, commonly known as Pinellas Center, lots 11 and 12 (Pinellas realty). Petitioners filed a petition with this Court, and we acquired jurisdiction of the 1984, 1985, and 1986 income tax years. Thereafter, respondent filed an answer.

Subsequently, respondent moved for summary judgment, petitioners failed to respond to respondent's motion, and a decision was entered against petitioners based, in great part, on facts we deemed admitted. See *Miravalle v. Commis-*

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the periods under consideration.

*sioner,* T.C. Memo. 1994–49. Petitioners filed a motion seeking to vacate our decision. Petitioners' motion was taken under advisement subject to the outcome of a related case for subsequent years. If petitioners were successful with respect to issues in the subsequent years, we would look favorably on petitioners' motion.[2]

After the seizure and before petitioners' motion, Hillsborough County, Florida, sold a tax certificate on the Pinellas realty (due to unpaid real estate taxes) to BankAtlantic on May 29, 1992. On October 19, 1994, BankAtlantic sold the property to a group of investors (the investors) for $135,000. From the date of the jeopardy assessment until the time of the tax sale, a Federal tax lien attached to the Pinellas realty.[3]

Of the $135,000 received from the investors, the $102,287.82 surplus after payment of local liens or claims with priority over the Federal tax lien was paid to respondent. On February 14, 1995, and pursuant to section 7425, respondent redeemed the property from the investors. Respondent then executed and caused to be filed a "certificate of redemption" under the provisions of section 7425(d)(3)(C).[4] Respondent advertised the Pinellas realty for sale, and petitioners moved to stay the sale.

## Discussion

Section 6861 permits the Commissioner to assess a tax deficiency and to pursue collection (e.g., seize the taxpayer's property) where it is believed that collection is in jeopardy, without mailing a deficiency notice to the taxpayer before

---

[2] Petitioners were generally unsuccessful in the companion case. See *Miravalle v. Commissioner,* T.C. Memo. 1995–349.

[3] Under Florida law, a tax certificate may be sold at a public sale with open bidding. The certificate is sold, at a minimum, for the amount of unpaid local tax and costs, but may be sold, ultimately, to the highest bidder. Two years after Apr. 1 of the year of acquiring a tax certificate, the purchaser may apply for a tax deed. The tax certificate process has the effect of eliminating all junior liens or claims against the realty. During the 2-year waiting period for issuance of a tax deed, however, a junior lienor or claimant whose interest was eliminated may redeem the property from the purchaser. See Fla. Stat. Ann. sec. 197, subsecs. 122, 402(3), 472(a), 502(1), 502(4)(c) (West 1989 & Supp. 1995); *United States v. Marion County,* 826 F. Supp. 1400, 1402 (M.D. Fla. 1993).

[4] Sec. 7425 enabled respondent to redeem the real property and to acquire title. Sec. 7425(d)(3)(A) and (B) contains the procedures by which respondent may execute and file a certificate of redemption. Sec. 7425(d)(3)(C) provides that the filed certificate constitutes "prima facie evidence of the regularity of such redemption and shall * * * transfer to the United States all the rights, title, and interest in and to such property acquired by the person from whom the United States redeems such property".

assessment. The taxpayer's right to contest the deficiency in this Court is preserved by section 6861(b), which provides that "If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary *shall* mail a notice under such subsection within 60 days after the making of the assessment." (Emphasis added.)

When a taxpayer timely petitions this Court after a jeopardy assessment, with limited exceptions, section 6863 restricts the sale of any property that has been seized for the collection of tax. The restriction remains in effect during the period in which the assessment of the deficiency would be prohibited if section 6861(a) did not apply.[5] Section 6863(b)(3)(B)(i), (ii), and (iii) provides for three exceptions to the stay: If the taxpayer consents to the sale; if it is determined by the Government that the expenses of conserving and maintaining the property will greatly reduce the sale proceeds expected from the property; or if the property is perishable. See *Galusha v. Commissioner,* 95 T.C. 218 (1990); *Williams v. Commissioner,* 92 T.C. 920 (1989). This Court has jurisdiction to review motions to stay the sale of seized property, as provided in section 6863(b)(3)(C).[6]

Respondent does not contend that any of the statutory exceptions of section 6863(b)(3)(B) apply. Additionally, she does not question the general rule under section 6863(b)(3)(A)(iii) that the sale of property seized in connection with a jeopardy assessment is restricted prior to resolution of the underlying tax controversy in this Court. Instead, respondent argues that the Pinellas realty is no longer "seized" within the meaning of section 6863 because respondent, under section 7425, acquired title to and/or ownership in

---

[5] In pertinent part, sec. 6863(b)(3)(A) states the general rule that

Where, notwithstanding the provisions of section 6213(a), an assessment has been made under section 6851, 6852, or 6861, the property seized for the collection of the tax shall not be sold * * * if a petition is filed with the Tax Court (whether before or after the making of such assessment), before the expiration of the period during which the assessment of the deficiency would be prohibited if neither sections 6851(a), 6852(a), nor 6861(a) were applicable.

[6] Sec. 6863(b)(3)(C) provides:

(C) REVIEW BY TAX COURT.—If, but for the application of subparagraph (B), a sale would be prohibited by subparagraph (A)(iii), then the Tax Court shall have jurisdiction to review the Secretary's determination under subparagraph (B) that the property may be sold. Such review may be commenced upon motion by either the Secretary or the taxpayer. An order of the Tax Court disposing of a motion under this paragraph shall be reviewable in the same manner as a decision of the Tax Court.

the Pinellas realty. Respondent's argument focuses on the Government's loss of lien status and acquisition of title to the realty. Respondent contends that in consequence of the local tax sale and the redemption, the realty is no longer held by the Government, pursuant to the lien, as "seized property". As a result, respondent contends that this Court has no jurisdiction, under section 6863(b)(3)(C), to stay the sale of the Pinellas realty because that section is limited to seized property that respondent proposes to sell under section 6335.

Accordingly, our inquiry is whether our jurisdiction or authority to stay sales under section 6863(b)(3)(C) extends to the property involved here. This presents a question of first impression.

Because our jurisdiction is statutorily derived, whether we have jurisdiction to stay the sale of the realty can only be resolved by an analysis of the statutory language.[7] Section 6863(b)(3)(A) contains the general rule that, after a jeopardy assessment has been made under section 6861, "the property seized for the collection of the tax shall not be sold" while a timely petition for redetermination of the tax is pending with the Tax Court. If respondent determines to sell seized property under one of the statutory exceptions to the stay of sale, section 6863(b)(3)(C) grants jurisdiction to this Court to review respondent's determination in that respect.

There is no question that we have jurisdiction over the merits of petitioners' 1984, 1985, and 1986 tax liabilities. There is also no question that the restriction of section 6863(b)(3)(A) came into play after the jeopardy assessment, seizure of the Pinellas realty, and petition to this Court. There is also no question that, ordinarily, we would lack authority to 'stay the sale of property that had been redeemed by the U.S. Government. If, however, property is first seized, then released from the seizure, and then redeemed by respondent under circumstances presented here, do we have jurisdiction under section 6863 to stay respondent from selling the property?

Prior to 1989, taxpayers were limited to actions in the U.S. District Courts if they sought to enjoin the sale of seized property. See *Williams v. Commissioner,* 92 T.C. 920 (1989).

---

[7] Even if we were to decide that it would be unfair or inequitable for respondent to sell the property in question, we cannot provide relief unless we have jurisdiction to stay the sale.

This was so even if the underlying tax liability was subject to review in this Court. Section 6863(b)(3)(C) was added to the Code in 1988 to grant this Court jurisdiction to stay sales of property in circumstances described therein. See Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 6245(a), 102 Stat. 3750.

Section 6861 enables the Commissioner to safeguard the revenue by assessing a tax and seizing property for the collection of the tax where it is determined that collection is in jeopardy.[8] Under section 6863(b)(3)(B), however, as explained above, the sale of such property is restricted after a timely petition has been filed and during the pendency of a case before this Court, unless the circumstances fall within one of three exceptions set forth in section 6863(b)(3)(B) (i.e., the asset is perishable, costs of maintaining the asset will greatly reduce the proceeds of sale, or the taxpayer consents to sale).

Reviewing the progression of events in this case is helpful to an understanding of why section 6863 would not apply to situations where the Government redeems real property. After the jeopardy assessment, the Federal tax lien came into existence and attached to all of petitioners' property and rights to the property. Secs. 6861, 6321. Due to the Federal tax lien, respondent was able to, and did, seize petitioners' Pinellas realty. Sec. 6331. After the seizure, petitioners continued to have an interest in the property, subject to the Federal tax lien, seizure, and the Government's authority to sell the property. See sec. 6335. It should be noted that petitioners were entitled to redeem the property from respondent, both before and after (for a limited time) any sale of the property pursuant to the seizure. See sec. 6337. Subsequent to the seizure, however, the State of Florida sold a tax certificate to satisfy local real estate tax in arrears. Because the Federal Government was given proper notice, the local tax sale caused the elimination of all junior liens, including that of the Federal Government. *Southern Bank v. I.R.S.*, 770 F.2d 1001, 1005–1008 (11th Cir. 1985), cert.

---

[8] Once the tax is assessed, the Government's statutory lien arises on all property and rights to property, and the said property may be seized. One prominent reason for making a jeopardy assessment is to permit the seizure of property that the Commissioner believes the taxpayer is attempting to place outside the Commissioner's reach.

denied sub nom. *Mid-State Homes, Inc. v. United States,* 476 U.S. 1169 (1986).

After the local tax sale, petitioners no longer had any interest or rights in the Pinellas realty. Additionally, the local tax sale extinguished respondent's lien upon the Pinellas realty. Accordingly, the Pinellas realty could no longer be subject to seizure by the Federal Government under section 6331. After the local tax sale, the lien (section 6321) and seizure (section 6331) statutes no longer applied to the Pinellas realty. Respondent, however, had the option, through section 7425, to redeem the realty and acquire legal title to the same. The Federal Government acquired legal title after the section 7425 redemption. Petitioners acquired no interest or rights in the Pinellas property, although the Government is obliged to apply against a taxpayer's delinquent liability the net proceeds from the sale of redeemed property. See sec. 6342.[9] Respondent's proposed sale of the Pinellas realty, as authorized by section 7425, would be used to realize any remaining equity in the property to be applied against petitioners' tax liability, as provided in section 6342. See *Southwest Prods. Co. v. United States,* 882 F.2d 113, 118 (4th Cir. 1989).

We conclude that the restrictions of section 6863(b)(3) do not apply to the proposed sale of the property here, which was released from seizure by reason of the local tax sale extinguishing the Federal Government's lien, and was later redeemed by the Government under section 7425. These restrictions do not apply unless the Government proceeds to sell seized property pursuant to section 6335, which brings into play the restrictions of section 6863(b)(3).[10] Here, the Government is not proceeding under section 6335. Instead, the Government is attempting to sell redeemed property under section 7425, and Congress has not given this Court authority to review such a sale.

The section 6863(b)(3) stay provisions are designed to maintain a balance between the Commissioner's collection concerns and taxpayers' right to deficiency (prepayment)

---

[9] After the local tax sale, $102,287.82 of the $135,000 sale proceeds was paid to respondent and applied to petitioners' assessed tax liability.

[10] Sec. 6335, which authorizes the Government to sell seized property, contains a cross-reference to sec. 6863(b)(3). However, no similar cross-reference appears in sec. 7425 or sec. 7506. Sec. 6335(g) provides: "For restrictions on sale of seized property pending Tax Court decision, see section 6863(b)(3)."

procedures. We recognize that one of the major purposes for restricting the sale of seized property after a jeopardy assessment is that the amount assessed under the jeopardy procedures remains subject to redetermination where a timely petition is filed with this Court. Nevertheless, we are not empowered to stay the sale of the redeemed property here. We do not read section 6863(b)(3)(C) as extending to this situation.

We hold that section 6863(b)(3)(C) does not afford this Court jurisdiction to stay the sale of the Pinellas realty.

*An appropriate order will be issued.*