WOLF, Judge.
This case involves a dispute between two competing chains of title. Appellant, W.C. Sullivan, brought an action to quiet title on certain land in Madison County, Florida, near the Georgia border. The trial court denied the relief requested by appellant and determined that title to the subject property was in appellee, J.T. Woodward. Appellant raises several issues on appeal. Because we find that the trial judge erred in determining the appellee’s chain of title to be superior to the appellant’s, we need not reach the other issues raised by appellant. We reverse.
Appellant claims title on the basis of an original Georgia land grant of Fractional Land Lot Number 207 to James Shanks in 1844.[1] This grant was never recorded in Madison County. In addition, there are several breaks in appellant’s chain of title prior to a tax deed issued to a predecessor in title in 1896. After 1896, there is a continuous recorded chain of title through to the appellant. Appellant received a deed to the land in question in 1945 and has paid taxes on the land ever since.
The appellee, J.T. Woodward’s chain of title arises from a conveyance in 1883 from the Trustees of the Internal Improvement Fund of the State of Florida to James Cody. This deed described the land as the fractional north half of the northeast quarter of section 32, township 3 north, range 10 east.
The trial judge found appellee’s title to be superior, primarily relying on the fact that the grant of title from the state of Georgia was never recorded.
The confusion in this case arises due to changes in the boundary lines between Georgia and Florida and the original reliance on separate surveys and legal descriptions by the states concerning the same piece of property. Section 6.10, Florida Statutes (1989), “The Confirmation Act,” appears to have been originally en *33 acted to alleviate some of this confusion.[2] The statute reads as follows:
The title of bona fide holders of land under any grant from the State of Georgia prior to December 22, 1859, in the territory formerly claimed by the said state, which land is within the State of Florida by the line specified in S. 6.09 remain confirmed so far as this state had the right and power to confirm the same as provided by the act of December 22, 1859.
Section 6.10, Florida Statutes (1859). The legal effect of this Act was to validate all lands granted by the State of Georgia prior to 1859 which subsequently became a part of the state of Florida due to boundary changes.
The effect of the Confirmation Act was not only to validate the conveyance, but also to necessarily validate the legal description utilized in effectuating the conveyance. In fact, two registered surveyors testified at trial that the subject land was part of lot 207 as described in appellant’s chain of title.[3] Appellee conceded at oral argument that if the original Georgia grant had been recorded, appellant’s chain of title would be superior. Both appellee and the trial court misconstrued the legal effect of the failure to record the Georgia grant.
The Confirmation Act does not require recording. The failure to record a deed does not necessarily affect the validity of conveyance, but rather operates to protect subsequent purchasers for valuable consideration without notice. § 695.01, F.S. (1990). Since appellee neither alleged nor proved that anyone within his title chain was a bona fide purchaser without notice, the failure to record would not cause appellant’s chain of title to be inferior to that of appellee.
The record further supports the appellant’s claim because of the legal effect of the tax deed issued to a predecessor of the appellant in 1896. The legal effect of a tax deed is to extinguish and terminate by operation of law all prior existing titles resting in private ownership. Stuart v. Stephanus, 94 Fla. 1087, 114 So. 767 (1927). The rule is that a title conveyed by a tax deed in a valid procedure gives the purchaser a new, complete and paramount title, free from all prior rights and titles of private persons. Tax deeds are themselves prima facie evidence of their own validity. D.R.L. v. Murphy, 508 So.2d 413 (Fla. 5th DCA 1987), rev. denied, 518 So.2d 1277 (Fla.1987). Thus, regardless of which private persons owned the land prior to 1896, after the tax deed was issued to a predecessor of the appellant, all previous titles were terminated as a matter of law.
Because of the legal effect of the Confirmation Act and the tax deed, we find that the trial court erred in finding appellee’s chain of title to be superior to appellant. We, therefore, reverse the order of the trial court with instructions for the trial court to quiet title in the appellant.
ZEHMER and BARFIELD, JJ., concur.

. Neither party alleged that the Marketable Record Title Act (MRTA) was applicable in the instant case. Even if it had been raised, it would have be inapplicable. Section 712.03(4), Florida Statutes, would act to preclude the appellant from relying on the MRTA because of subsequent deeds in the appellee’s chain. Section 712.03(6) acts to preclude the appellee from relying on the MRTA because the appellant has paid taxes on the property within the last three years, and his name is on the tax roll. Additionally, MRTA is not appropriate where there are two titles each with a root of title over 30 years old. Holland v. Hattaway, 438 So.2d 456 (Fla. 5th DCA 1983).

. While the legal effect of this statute is of significance in determining the validity of appellant’s claim, the trial judge never addressed the statute within the final judgment.

. While one surveyor had also stated that the land at issue could be located in appellee’s chain of title, he conceded that it was generally known through the surveying community that the survey referencing the Georgia legal description took precedence in these lands.