**UNITED STATES of America, Plaintiff,**

v.

**MARION COUNTY, FLORIDA, et al., Defendants.**

**No. 91–192–Civ–Oc–16.**

United States District Court, M.D. Florida, Ocala Division.

March 31, 1993.

Ralph Lee.

Kathleen C. Freeble.

Robert Jeffrey Fowler.

Charles E. Berk.

## ORDER

JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on the following motions, which are all ripe for the Court's consideration and resolution: (1) Plaintiff's Motion for Summary Judgment filed April 23, 1992 (Doc. # 27); (2) Defendant's Cross Motion for Summary Judgment filed May 6, 1992 (Doc. # 30); and (3) Plaintiff's Motion to Dismiss Defendant's Counterclaim filed May 22, 1992 (Doc. # 32).

### Background

Based on the record herein, the Court makes the following findings of fact: On October 17, 1985, Richard and Willie Mae Sherouse gave a first-purchase money mortgage to the Administrator of Veteran's Affairs ("VA")[1] for a parcel of property [1] ("the property") in Ocala, Florida. The mortgage was recorded in Marion County, Florida's Official Records Book 1216, Page 1695. The VA contemporaneously conveyed the proper-

---

1. The property is described as:
   Commence at the S.E. corner of Section 33, Township 14 South, Range 22 East, Marion County, Florida, thence West along the centerline of N.E. 35th Street and South boundary of said Section 1050.00 feet to a point, thence North 00 degrees 08 minutes 45 seconds East 25 feet to the North R/W of said road, and the POINT OF BEGINNING, thence North 00 degrees 08 minutes 45 seconds East 135.00 feet to a point, on the North R/W of said road, thence along said R/W West 85.00 feet to the P.O.B., better known as 22130 Northeast 35th Street, Ocala, Florida.

ty to the Sherouses and entered into a promissory note[2] with them.

On April 17, 1991, the Clerk of the Marion County Circuit Court issued a tax deed, file number 127328, on the property to Defendants Charles Berk and Patricia Berk in trust for Defendant Catherine Rudnianyn[3]. The tax deed was founded upon a tax certificate issued by Marion County in 1988 for unpaid taxes in 1987. In issuing this tax deed, Marion County complied with all of the requirements of Chapter 197, Florida Statutes. In particular, the notice of sale of the tax deed was sent by Certified Mail, Return Receipt Requested, to the Veteran's Administration, Office of District Counsel, prior to the sale, in compliance with Fla.Stat. § 197.522. Notice was received on March 18, 1991.

### Discussion

In *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the United States Supreme Court held that absent a congressional directive, the relative priority of private and consensual liens created by federal lending programs is to be determined under "nondiscriminatory state laws." *Id.* at 740, 99 S.Ct. at 1465. Although *Kimbell Foods* concerned the lending programs of the Small Business Administration and the Farmers Home Administration, the Court's analysis concerning the unsubstantiated need for uniformity and for special protection of federal lending program objectives is pertinent here. *See generally Kimbell Foods, id.* at 729–38, 99 S.Ct. at 1459–64.

■ The Court specifically found that "[i]ncorporating state law to determine the rights of the United States as against private creditors would in no way hinder administration of the . . . loan programs," *id.* at 730, 99 S.Ct. at 1459, and "that compliance with state law would produce no hardship on the agency." *Id.* The Court observed that "when the United States acts as a lender or guarantor, it does so voluntarily, with detailed knowledge of the borrower's financial sta-

tus." *Id.* at 737, 99 S.Ct. at 1462. The government's interest in recouping advanced sums in such a capacity does not justify "the extraordinary priority accorded federal tax liens through the choateness and first-in-time doctrines." *Id.* at 735, 99 S.Ct. at 1462. The Court concluded, "[t]he Government therefore is in substantially the same position as private lenders, and the special status it seeks is unnecessary to safeguard the public fisc." *Id.* at 738, 99 S.Ct. at 1463.

This Court finds the holding in *Kimbell Foods* persuasive, and approves of its application to priority disputes between the VA liens and state and local tax liens. This Court believes that, like the programs administered by the SBA and FmHA, the VA's lending program is a "form of social welfare" which does not warrant any preferred status. *Id.* at 736, 99 S.Ct. at 1462. The VA has volunteered itself as a lending institution, and, as such, bears the risk and assumes the liability of any other private creditor. For the reasons set forth in *Kimbell Foods,* this Court finds that the VA is not entitled to a uniform rule or special protection. Consequently, the Court concludes that the priority of the liens in this cause must be determined by Florida law, if that law is nondiscriminatory.

■ Turning to whether the Florida priority scheme is discriminatory, the Court's attention is directed to the "roughly analogous question in the case law dealing with the intergovernmental tax immunity doctrine." *United States v. Tipton,* 898 F.2d 770, 773 (10th Cir.1990); *see generally Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989); *South Carolina v. Baker,* 485 U.S. 505, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988); *Phillips Chemical Co. v. Dumas Independent School District,* 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960). Applying the standard for identifying discriminatory state laws developed in the intergovernmental tax immunity area to the present case, the Court concludes that the statutes contained in Chapter 197, Florida Statutes, are nondiscriminatory. "While

---

**2.** The note was in the principal amount of $32,700.00 plus interest at the rate of 11.5 percent per annum.

**3.** The tax deed was issued for the sum of $5,000.00.

... the state itself admittedly benefits from the tax lien laws considered here, the onus is borne equally by all affected interests, whether federal, state, or private in nature." *Tipton,* 898 F.2d at 774. Therefore, pursuant to *Kimbell Foods,* the Court finds that the priority of the liens must be determined according to Florida law.

■■■ Under Florida law, the tax collector is required to advertise and sell tax certificates on "all real property with delinquent taxes." Fla.Stat. § 197.402(3). A lien evidenced by a tax certificate is "a first lien, superior to all other liens, on any property against which the taxes have been assessed." Fla.Stat. § 197.122 (1991). The holder of a tax certificate may file the certificate and apply for a tax deed after two years have elapsed since the issuance of the tax certificate. Fla.Stat. § 197.502(1). The Clerk of Court must provide notice of the application for a tax deed to several parties, including "[a]ny mortgagee of record if an address appears on the recorded mortgage." Fla. Stat. § 197.502(4)(c). The notice must comply with Fla.Stat. § 197.522; otherwise, the tax deed may be declared void. *Jernigan v. Harrison,* 136 Fla. 320, 186 So. 511 (1939). However, "the failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice." Fla.Stat. § 197.522(1)(d). "Any person may redeem a tax certificate ... at any time after the certificate is issued and before a tax deed is issued." Fla.Stat. § 197.472(1). *See also State ex rel. Town of Crescent City v. Holland,* 151 Fla. 806, 10 So.2d 577 (1942). If the certificate is not redeemed, the land covered by the certificates is sold by the clerk of the circuit court at a public auction as set forth in the notice. Fla.Stat. § 197.542(1). The procurement of a valid tax deed extinguishes former record title and creates in the purchaser a new, independent, and paramount title, *Baldwin Drainage Dist. v. Brown,* 165 F.2d 260 (5th Cir.1948); *Daniell v. Sherrill,* 48 So.2d 736 (Fla.1950); *Taff v. Hodge,* 182 So. 230, 132 Fla. 642 (1938); *Sullivan v. Woodward,* 582 So.2d 31 (Fla. 1st DCA 1991), as well as entitlement to "immediate possession of the lands described in the deed." Fla.Stat. § 197.562. In the present case, the United States has stipulated that all of the requirements of Chapter 197, Florida Statutes were met. Therefore, the issuance of the tax deed was valid, and operates to extinguish the VA's pre-existing lien.

■■■ The United States' argues that because its loan is considered by the federal statute to be a first lien, 38 U.S.C. § 3703(d)(3), the state's conflicting priority scheme or the extinguishment of the United States' lien is strictly prohibited by the Supremacy Clause. U.S. Const. Art. VI, cl. 2. However, as the United States concedes, properties acquired under the VA's lending program remain subject to the State and political subdivision's power to tax. 38 U.S.C. § 3720(a)(6). In light of this directive, the Court determines that the VA's lending program does not operate so as to preempt established, nondiscriminatory state law.

This Court is aware that the outcome here is contrary to precedent in this Circuit. In *United States v. Roessling,* 280 F.2d 933 (5th Cir.1960), the Court held:

No state or county can tax the property interests of the United States in the absence of congressional consent.... There is no constitutional prohibition against a state or county assessing taxes against property on which the United States holds a lien on the basis of the full value of that property, but, in the absence of congressional consent, the state or county is without authority to enforce the collection of the taxes thus assessed so as to destroy the preexisting federal lien.

*Id.* at 936. *Roessling* is easily distinguished from the present case. First, in *Roessling,* the Court was specifically dealing with the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, which "contain[ed] no language consenting to local taxation of property interests acquired by the Resettlement Administration under said Act." *Id.* As stated above, the statutory framework of the VA's lending program expressly authorizes and "consents to" such taxation. Additionally, the VA's lending program is more analogous to the SBA and FmHA lending programs, than it is to temporary legislation enacted

during the economic emergency in 1933. Second, this Court is of the opinion that the decision in *Kimbell Foods* effectively overrules *Roessling* to the extent that *Roessling* extends the "first-in-time, first-in-right" doctrine to federal mortgage liens. *See Kimbell Foods*, 440 U.S. at 735, 99 S.Ct. at 1462; *Roessling*, 280 F.2d at 936.

 Finally, the Court turns to whether the notice given by Marion County was adequate. Put another way, the issue before the Court is whether under the circumstances of this case, the County was required to serve the United States pursuant to 28 U.S.C. § 2410 or Rule 4(d), Fed.R.Civ.P. At the onset, the Court notes that no legal action was commenced, and thus service pursuant to Rule 4(d) is inapposite. Rule 4(d) specifically concerns the service of a summons and complaint on the United States, or an officer or agency thereof. In *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), the United States Supreme Court interpreted section 2410 as merely a consent to be sued and not a statement of the mandatory procedures to be followed in commencing such suits. *Id.* at 246, 80 S.Ct. at 1114. "The basic question is . . . whether Congress intended to exclude the application of all state procedures, whatever their existence or effectiveness might be. No such inference can be drawn." *Id.* at 250, 80 S.Ct. at 1116. This Court sees no reason to depart from the holding in *Brosnan*. "The *Brosnan* decision subjects federal tax liens to divestiture under state law. The federal consensual lien certainly does not warrant receiving any more protection than the federal tax lien or justify altering the traditional, nondiscriminatory state procedures for enforcing real estate tax liens." *United States v. Dansby*, 509 F.Supp. 188, 198 (N.D.Ohio 1981). In sum, the Court finds that the state's nondiscriminatory notice requirements are adequate, and are not preempted by section 2410 or Rule 4(d).

*Conclusion*

Based on the foregoing, it is the Court's conclusion and judgment that the Berks purchased the land in question at a valid sale, and take it free and clear of the Veteran's Administration's purchase money mortgage.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. That Plaintiff's Motion for Summary Judgment filed April 23, 1992 (Doc. # 27) is hereby **DENIED.**

2. That Defendant's Cross Motion for Summary Judgment filed May 6, 1992 (Doc. # 30) is hereby **GRANTED.**

3. That Plaintiff's Motion to Dismiss Defendant's Counterclaim filed May 22, 1992 (Doc. # 32) is hereby **DENIED.**

4. That the Clerk is directed to enter judgment in favor of the Defendants, and against the United States in this cause.

**DONE AND ORDERED.**