Mr. Daniel S. McIntyre St. Lucie County Attorney Third Floor Administration Annex 2300 Virginia Avenue Fort Pierce, Florida 34982-5652
Dear Mr. McIntyre:
On behalf of St. Lucie County, you ask substantially the following questions:
1. Does a non-ad valorem assessment which is levied by a municipal service benefit unit created by a county and which is collected in annual installments using the uniform method of collection pursuant to section 197.3632, Florida Statutes, constitute a "lien of record held by a governmental unit" for purposes of section197.582(2), Florida Statutes?
2. Does the total unpaid assessment principal under a municipal service benefit unit which is collected pursuant to section197.3632, Florida Statutes, constitute a lien of record held by a governmental unit for purposes of distributing excess monies bid at a tax deed sale pursuant to section 197.582(2), Florida Statutes?
3. May a county demand payment of the total assessment principal remaining unpaid after distribution of excess monies bid at a tax deed sale from the purchaser of the tax deed for property subject to assessment by the municipal service benefit unit if the overbid monies are insufficient to pay in full the total remaining assessment principal?
In sum:
1. and 2. In those situations in which the entire assessment is levied in the first year and the property owners are allowed to pay off the assessment in subsequent years with an acceleration clause for nonpayment, a lien on the entire assessment is created in the first year and thus constitutes a "lien of record held by a governmental unit" for purposes of section 197.582, Florida Statutes. If, however, the assessment is made in annual installments, then only the current assessment constitutes a lien. Future annual levies of the non-ad valorem assessments do not constitute a lien of record held by a governmental unit for purposes of section 197.582, Florida Statutes.
3. In those cases in which the entire assessment is levied in the first year, it qualifies as a lien of record held by a governmental unit and, if not satisfied by the proceeds of a tax sale, survives the issuance of the tax deed. However, if the assessments are levied annually, such future annual assessments do not attach until January 1 of that future year and would not, therefore, become a lien of record held by a government unit until that time.
The questions presented herein govern the distribution of funds at a tax deed sale. This situation arises as the result of one of three circumstances: the nonpayment of ad valorem taxes only, the nonpayment of non-ad valorem assessments, or the nonpayment of both ad valorem taxes and non-ad valorem assessments.
From the information provided to this office, it appears that the county has chosen to use the uniform method of collection of special assessments provided in section 197.3632, Florida Statutes. This opinion, therefore, addresses only non-ad valorem assessments that are properly collected through the uniform procedure set forth in that statute. It does not address or otherwise comment on the levy, enforcement, or collection of other types of taxes or assessments, such as municipal tax liens or special assessments foreclosed upon under chapter 173, Florida Statutes.[1]
It is further assumed for purposes of this inquiry that the municipal service benefit unit (MSBU) was properly created and that assessments by the MSBU have been authorized to be collected over a number of years from property owners.[2] Two situations may arise:
1. where the full amount of the lien is assessed and is placed on record against the property in the first year with the property owner allowed to pay the assessment off over a period of years in annual installments, or
2. where a separate assessment is imposed against the property each year with each assessment standing on its own, separate from other assessments.
This opinion addresses both situations. As your first and second question are interrelated, they are answered together.
Questions One and Two
Section 197.582(2), Florida Statutes, requires the clerk to distribute the excess of any monies bid at a tax deed sale to "governmental units for the payment of any lien of record held by a governmental unit against the property." If the excess monies bid are insufficient to pay in full all governmental liens of record, the statute directs the clerk to distribute such monies to the governmental units on a pro rata basis.
You ask whether the non-ad valorem assessment levied by the county and collected in annual installments using the procedures set forth in section 197.3632, Florida Statutes, constitute a "lien of record held by a governmental unit" for purposes of section197.582, Florida Statutes, and if so, whether the entire assessment, even though payment is spread over several years, constitutes such a lien.
Section 197.3632, Florida Statutes, offers to governmental entities greater assurance in the levy, collection and enforce-ment of non-ad valorem assessments.[3] "Non-ad valorem assessment" is defined for purposes of this section to mean "only those assessments which are not based upon millage and which can become a lien against a homestead as permitted by s. 4, Art. X of the State Constitution."[4] While non-ad valorem assessments may be collected by procedures other than those in sections 197.3632 and197.3635, Florida Statutes, the use of alternative collection procedures "shall not require the tax collector or property appraiser to perform those services provided in ss. 197.3632 and197.3635."[5]
Subsection (8)(a) of section 197.3632, Florida Statutes, provides:
Non-ad valorem assessments collected pursuant to this section shall be subject to all collection provisions of this chapter, including provisions relating to discount for early payment, prepayment by installment method, deferred payment, penalty for delinquent payment, and issuance and sale of tax certificates and tax deeds for nonpayment.[6]
The property appraiser is required to assess all property located within the county, except inventory, such property to be assessed as to its just value on January 1 of each year.[7] A lien for all taxes, penalties and interest attaches to any property upon which a lien is imposed by law on the date of assessment and continues in full force and effect until discharged by payment as provided in chapter 197, Florida Statutes, or until barred under chapter 95, Florida Statutes.[8] When taxes are unpaid, chapter 197 provides for the sale of tax certificates by public auction.[9]
Pursuant to section 197.432, Florida Statutes, the lien created through the sale of tax certificates may not be enforced through another chapter.[10]
With respect to the assessments in question in the instant inquiry and as previously noted, the entire assessment is, in some cases, assessed in the first year with the property owners being allowed to pay the assessment off in installments over a period of years. Section 1-13.5-10(a) of the St. Lucie County Code provides:
[S]pecial assessments shall remain liens, inferior to the lien of all federal, state, county, district and municipal taxes, but superior in dignity to all other liens, titles and claims until paid. . . .
This office has been advised that the enabling ordinance contains an acceleration clause. In the event that a property owner defaults on payment of any installment of principal or interest of a special assessment, the county code provides that all installments of the principal then remaining under the special assessment shall become immediately due and payable and subject to foreclosure without further notice or other proceedings.[11] In such case, the amount of the assessment is fixed at the time of the levy although it is permitted to be paid off in installments.
Thus, when the entire assessment is levied against the real property and the enabling ordinance contains an acceleration clause, it appears that the entire recorded non-ad valorem assessment, collected pursuant to section 197.3632, Florida Statutes, would be a "lien of record held by a governmental unit" for purposes of section 197.582(2), Florida Statutes. As long as there are overbid funds available to retire such obligations, their payment should be accounted for as provided in section197.582, Florida Statutes. To the extent, however, that section197.582 would allow a government lien to be satisfied prior to another lien that had been perfected at an earlier time, constitutional problems may exist.[12]
In contrast, however, are those situations in which the nonad valorem assessment is levied against property in annual assessments that take place over a period of years. Only those annual assessments that have been assessed and are delinquent would constitute a "lien of record held by a governmental unit" for purposes of section 197.582(2), Florida Statutes.
Annual assessments for future years would not be assessed and a lien would not attach until January 1 of the future year in question. Thus, as they are not liens for purposes of chapter 197, Florida Statutes, future assessments would not constitute a "lien of record held by a governmental unit." Distribution of any surplus funds must be made in strict accordance with section197.582(2), Florida Statutes, and does not include payment of future annual assessments not yet levied.
Question Three
When sufficient funds exist from the tax deed sale to satisfy governmental liens, no problem should result. However, when insufficient surplus funds exist, the clerk is obligated to distribute the surplus to the governmental entities on a prorata basis.[13]
In general, a valid tax deed extinguishes a number of liens such as mortgages,[14] and gives the purchaser a new, complete, paramount title free from all prior rights and titles of private persons, provided the underlying tax assessment was valid.[15]
However, there are a number of county and municipal assessments, some of which are collected pursuant to section 197.3632, Florida Statutes, that are specifically exempted. For example, section197.552, Florida Statutes, states in part that "a lien of record held by a municipal or county governmental unit, when such lien is not satisfied as of the disbursement of proceeds of sale under the provisions of s. 197.582, F.S., shall survive the issuance of a tax deed."[16]
As discussed in the previous questions, where the entire assessment is levied in the first year, such assessment qualifies as a "lien of record held by a governmental unit." When not satisfied by the proceeds of the tax sale, such lien survives the issuance. A review of the tax deed sale and the underlying assessment, however, cannot be undertaken by this office but rather must be presumed to be valid and constitutional. Therefore, the county is in a position to collect on its assessment after the tax deed is issued to the subsequent owner. The appropriate means for doing so, however, are beyond the scope of this opinion.
In light of the discussion contained in the previous question to the effect that future annual assessments would not attach until January 1 of the future year in question, such assessments would not have become a lien of record held by a governmental unit and, thus, proceeds from a tax deed sale could not be used to pay them off under section 197.582(2), Fla. Stat.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 197.222, Fla. Stat., identifies an additional method of collecting ad valorem taxes by prepayment of the estimated ad valorem tax in quarterly installments, at the taxpayer's election. Because collection of non-ad valorem assessments made under the uniform procedure contained in s. 197.3632, Fla. Stat., may utilize all collection procedures contained in Ch. 197, Fla. Stat., see, s. 197.3632(8), Fla. Stat., the possibility of collecting assessments through s. 197.222, Fla. Stat., is acknowledged but is not addressed separately herein.
[2] While you have included with your opinion request portions of Ch. 1-13.5, St. Lucie County Code of Ordinances (Code), which is the general enabling legislation allowing the county to create multiple service taxing or benefit units and to levy assessments, this section does not specify how the assessments are to be levied against the subject property.
[3] Section 197.3632, Fla. Stat., was created by Ch. 88-130, s. 69, and Ch. 88-216, s. 7, Laws of Fla., which became effective October 1, 1989.
[4] Section 197.3632(1)(d), Fla. Stat. Article X, s. 4, Fla. Const., provides that homestead properties, as defined therein, may be subject to liens for payment of taxes and assessments. See also, Op. Att'y Gen. Fla. 90-39 (1990) and Op. Att'y Gen. Fla. 90-47 (1990), which address various charges levied by county and municipal authorities that may be collected pursuant to s.197.3632, Fla. Stat.
[5] See, s. 197.3631, Fla. Stat., which was created during the same legislative session as s. 197.3632, Fla. Stat. See, Ch. 88-216, s. 6, Laws of Fla.
[6] See, s. 197.3632(7), Fla. Stat., which provides that ad valorem taxes and non-ad valorem assessments are combined on a single notice. The ad valorem taxes and the non-ad valorem assessments are separately placed on the notice and are then combined into a single figure on the notice, adjusted only for appropriate early payment discounts.
[7] See, ss. 192.011 and 192.042, Fla. Stat., respectively.
[8] Section 192.053, Fla. Stat.
[9] See, e.g., ss. 197.402 and 197.432, Fla. Stat.
[10] Section 197.432(2), Fla. Stat. ("A lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in this chapter").
[11] Section 1-13.5-10(f), St. Lucie County Code.
[12] See, Op. Att'y Gen. Fla. 91-64 (1991) which discusses the constitutional problems that may exist when a lien perfected earlier in time is displaced or impaired.
[13] See, s. 197.582(2), Fla. Stat.
[14] See, e.g., Dudemain v.Shaw, 16 So.2d 114 (Fla. 1944).
[15] See, Sullivan v. Woodward, 582 So.2d 31 (Fla. 1st DCA 1991), and Cape Atlantic Landowners Association, Inc. v. County of Volusia, 581 So.2d 1384 (Fla. 5th DCA 1991).
[16] Prior opinions of this office addressed county welfare liens, Op. Att'y Gen. Fla. 76-168 (1976); solid waste disposal assessments, Op. Att'y Gen. Fla. 90-39 (1990), Op. Att'y Gen. Fla. 92-11 (1992), and Op. Att'y Gen. Fla. 89-85 (1989); and storm water utility fees, Op. Att'y Gen. Fla. 90-47 (1990). And see, Ch. 12D-18, F.A.C., for rules of the Department of Revenue concerning non-ad valorem assessments.