**In Re: UPSET TAX SALE, SEPTEMBER 13, 2006.**

**1333 Elson Road Chester Township Tax Parcel No. 07–00–00294–31**

**Appeal of: Patrick T. Carney.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2009.

Decided July 24, 2009.

---

Michael P. Dignazio, Media, for appellant.

David R. Urbany, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Patrick T. Carney appeals from the September 24, 2007, order of the Court of Common Pleas of Delaware County (trial court) denying Carney's petition to set aside the September 13, 2006, upset tax sale of the premises located at 1333 Ellison Road, Delaware County, Pennsylvania (Property). We reverse.

In 2004, Russell J. Jones owned the Property with a mortgage guaranteed and/or insured by the United States Veterans Administration. Because real estate taxes on the Property were unpaid for the tax year 2004, the Property became the subject of an upset tax sale pursuant to section 601 of the Pennsylvania Tax Sale Law[1] (Law), 72 P.S. § 5860.601. On April 2, 2005, the Delaware County Tax Claim Bureau (Tax Claim Bureau) sent a Notice of Return and Claim to Jones; however, the Notice of Return and Claim was returned to the Tax Claim Bureau as unclaimed and was subsequently posted at the Property by the Delaware County Sheriff's Department. (R.R. at 25–30.)

Thereafter, the Secretary of Veterans Affairs (V.A.) foreclosed on Jones' mortgage, and by Sheriff's deed recorded on December 22, 2005, the V.A. became the record owner of the Property. (R.R. at 18, 42–46.) As required by section 602(e)(1) of the Law, 72 P.S. § 5860.602(e)(1), the Tax Claim Bureau mailed notice of the upset tax sale to the V.A. at the address set forth in the December 22, 2005, deed via certified mail, return receipt requested. Receipt of this notice was signed for by Larry Nicholson at the stated address. (R.R. at 49–50.) In addition, notice of the upset tax sale was properly published and posted by the Tax Claim Bureau pursuant to section 602(a) of the Law, 72 P.S. § 5860.602(a). (R.R. at 32–40.)

After all statutorily required notices had been given, the Tax Claim Bureau conducted the upset tax sale of the Property on September 13, 2006, at which Arthur F. Urbany, the authorized General Partner for Allied Property Brokerage (Purchaser), was the successful bidder. On or about October 16, 2006, the Tax Claim Bureau sent post-sale notice of the September 13, 2006, upset tax sale to the V.A. by certified mail, return receipt requested, as required by section 607(a.1) of the Law, 72 P.S. § 5860.607(a.1); again, Larry Nicholson signed the certified mail return

---

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.601.

receipt card. (R.R. at 52–53.) The V.A. did not file objections to the September 13, 2006, upset tax sale.

By deed recorded on December 28, 2006, the V.A. transferred the Property from the V.A. to Carney. (R.R. at 18–23.) On March 7, 2007, after learning of the upset tax sale, Carney filed a Petition Raising Objections and Exceptions to Upset Tax Sale (Petition), seeking to invalidate the sale of the Property owned by the V.A. as violative of the privileges and immunity clause of the U.S. Constitution. (R.R. at 3–5.) The case was submitted to the trial court on stipulated facts, and Carney and Purchaser filed memoranda of law in support of their respective positions. By order dated September 24, 2007, the trial court denied Carney's Petition.

Carney appealed, and the trial court directed him to file a concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925(b). Carney did so, raising the issue of sovereign immunity. Specifically, Carney argued that the trial court erred in denying his Petition because an upset tax sale pursuant to section 601 of the Law is a non-judicial means of foreclosing upon a delinquent tax lien, and, pursuant to 28 U.S.C. §§ 2410(a) and (c), the United States consents to be sued, i.e., waives sovereign immunity, only when such action is accomplished through a judicial sale.[2] (R.R. at 69.)

28 U.S.C. §§ 2410(a) and (c), (emphasis added), provide, in relevant part, as follows:

(a) ... [F]or the protection of the United States, the United States may be

named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

...

(2) to foreclose a mortgage or other lien upon,

...

real or personal property on which the United States has or claims a mortgage or other lien.

...

(c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, *an action to foreclose a mortgage or other lien, naming the* United States as a party under this section, must seek judicial sale.... Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem, except that ... in any case in which, under the provisions of ... subsection (d) of section 3720 of title 38 of the United States Code, the right to redeem does not arise, there shall be no right of redemption.

■ The trial court addressed the issue raised by Carney in a December 31, 2008, decision supporting its prior order. The trial court first recognized that the provisions of 38 U.S.C. § 3720 contain a waiver of sovereign immunity arising out of Chapter 37 of the Veteran's Benefits section of the United States Code.[3] The trial court

---

**2.** Alternatively, Carney argued that, if the United States' title in property is subject to an upset tax sale, then service in compliance with 28 U.S.C. § 2410(b) was required. (R.R. at 69.)

**3.** The trial court relied upon *Wilson v. Squirrel*, No. Civ. A. 00–3819, 2000 WL 33154288

(E.D.Pa., Jan.29, 2000), for this proposition. In *Wilson*, the V.A. moved to dismiss an action brought against it alleging that the V.A. committed fraud by failing to disclose that the home purchased by Wilson was built on an illegal landfill. Wilson asserted that the court had jurisdiction because the United States had waived sovereign immunity in 38 U.S.C.

then explained that it dismissed Carney's Petition based upon the language in 38 U.S.C. § 3720(a)(6).[4] (Carney's brief at 18–21.) 38 U.S.C. § 3720 provides, in relevant part, as follows:

(a) *Notwithstanding the provisions of any other law*, with respect to matters arising by reason of this chapter, *the Secretary may—*

(1) sue and be sued in the Secretary's official capacity in any court of competent jurisdiction . . .

. . .

(5) purchase at any sale, public or private, upon such terms and for such prices as the Secretary determines to be reasonable, and *take title to, property,* real, personal or mixed; *and similarly sell,* at public or private sale, exchange, assign, convey, or otherwise dispose of *any such property;* and

(6) complete, administer, operate, obtain and pay for insurance on, and maintain, renovate, repair, modernize, lease, or otherwise *deal with any property acquired or held pursuant to this chapter. The acquisition of any such property shall not deprive any State or political subdivision thereof of its civil or criminal jurisdiction of, on, or over such property (including power to tax) or impair the rights under the State or local law of any persons on such property.*

. . .

(d) The right to redeem provided for by section 2410(c) of title 28 shall not arise in any case in which the subordinate lien or interest of the United States derives from a guaranteed or insured loan.

38 U.S.C. § 3720(a), (d). (Emphasis added.) Carney now appeals to this court.[5]

Carney argues that the language of 38 U.S.C. § 3720(a)(6) does not constitute the consent of Congress necessary to expose real property owned by the United States of America or its instrumentality to an upset tax sale pursuant to section 601 of the Law.[6]

 Under the doctrine of sovereign immunity, the United States cannot be sued without its consent, and a proceeding against property in which a federal agency has an interest is a suit against the United States and cannot be maintained without its consent. *United States v. Alabama,* 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); *United States v. Dansby,* 509 F.Supp. 188 (N.D.Ohio 1981).

§ 3720(a)(1), which provides that the V.A. may "sue and be sued" in any court of competent jurisdiction. *The court agreed that 38 U.S.C. § 3720(a)(1) is a waiver of sovereign immunity provision for matters arising out of Chapter 37 of the Veterans' Benefits section of the United States Code.* However, the court held that because the V.A. had not financed the home through a home loan, the waiver of sovereign immunity did not apply. Unlike the case now before us, *Wilson* was a judicial proceeding under 38 U.S.C. § 3720(a)(1), and it did not involve the loss of property owned by the V.A.

4. Moreover, the trial court held that 28 U.S.C. § 2410(b), upon which Carney relied to argue that the V.A. did not get proper notice of the upset tax sale, was inapplicable because it applies only to actions involving complaints

or pleadings and not tax sales instituted by petitions or otherwise. (Carney's brief at 21.)

5. This court's scope of review in a tax sale case is limited to determining whether the trial court abused its discretion, erred as a matter of law or rendered a decision unsupported by the evidence. *Hunter v. Washington County Tax Bureau,* 729 A.2d 142 (Pa. Cmwlth.1999).

6. In his Statement of Questions Involved, Carney sets forth as an alternative argument his prior objection that service upon the United States did not comply with 28 U.S.C. § 2410(b). However, because resolution of his first issue governs this second issue, Carney understandably fails to address the second issue in his brief; similarly, we need not address it.

Carney concedes that 38 U.S.C. § 3720(a)(6) constitutes a waiver of sovereign immunity from state and local *taxation* on property owned by the V.A. However, Carney maintains that, under 28 U.S.C. §§ 2410(a) and (c), the United States has waived sovereign immunity to actions foreclosing upon delinquent tax liens on property titled to the V.A. *only* where the state or local law seeks a judicial sale of the property. Because an upset tax sale under section 601 of the Law is not a judicial sale, Carney maintains that the upset tax sale of the Property was void *ab initio*.

Purchaser concedes that an upset tax sale is not a judicial sale. However, Purchaser counters that the United States waives its sovereign immunity to proceedings foreclosing upon delinquent tax liens, not only where there is a judicial sale, but also where Congress has enacted a federal statute expressly permitting such sales. *Alabama*.[7] According to Purchaser (and the trial court), this is precisely what Congress did in enacting 38 U.S.C. § 3720(a)(6). We disagree.

In support of his position, Carney cites *United States v. County of Richland*, 500 F.Supp. 312 (D.S.C.1980). In *Richland*, the Federal National Mortgage Association foreclosed upon real estate, and title to the property was transferred to the Secretary of Housing and Urban Development (HUD).[8] Thereafter, the Treasurer of Richland County levied on the real estate and advertised it for sale to satisfy delinquent real estate taxes assessed prior to HUD coming into title. The property was bought at the tax sale, and a deed was delivered to the purchaser, who then conveyed the property to another party. The United States brought a quiet title action seeking a declaration that the tax deed was void. The district court set forth the issue as follows:

> Does the purchase of real estate, or the acquisition of an interest therein, by an agency of the United States of America as assignee of a mortgage or the purchaser at a foreclosure sale, bar a political subdivision of the State of South Carolina (Richland County) from levying upon and selling such real estate to satisfy a debt for delinquent real property taxes which became due and payable, and for the payment of which a lien attached, prior to the time the federal agency purchased, or acquired an interest in, the subject real property without

---

7. In *Alabama*, the United States brought an action to quiet its title to land it owned in Alabama. The state had asserted tax liens on the land prior to the United States' acquisition and had conducted proceedings for the sale of the land for delinquent taxes after the United States became the owner; the United States asserted that both the tax liens and the tax sale were invalid. The United States Supreme Court held that the state's prior inchoate tax liens were valid against successors in title; however, with respect to the tax sale, the court stated as follows:

> The proceedings in the county court for the sale of the lands were taken and the decrees were rendered after the United States had become the owner of the tracts. A proceeding against property in which the United States has an interest is a suit against the United States. The United States was an indispensable party to proceedings for the sale of the lands, *and in the absence of its consent to the prosecution of such proceedings*, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the State were void.

*Alabama*, 313 U.S. at 282, 61 S.Ct. 1011 (emphasis added, citations omitted.)

8. *Richland* considered four cases; in two, HUD held title to the property, and in two, HUD had a mortgage on the property. The facts provided here are those of the first case discussed; however, the cases were consolidated because all four involved the same basic issues.

protecting the interest of the agency [pursuant to 28 U.S.C. § 2410(a)(2) ]? *Richland,* 500 F.Supp. at 315.

As to this issue, the United States argued that, although the property could be taxed based on the congressional waiver in 12 U.S.C. § 1706b,[9] and although the United States could be made a party in a suit to foreclose a mortgage or lien under 28 U.S.C. § 2410(a)(2), neither its real estate nor its interest in real estate under a mortgage could be extinguished by a levy, advertisement and sale. The county, in *Richland,* responded that because the county was specifically permitted to tax HUD owned properties under federal law, via an express congressional waiver, the county also should be entitled to sell the land for failure to pay taxes. The district court disagreed with the county, stating that "[t]o subject the property of the United States to levy and sale would require a specific waiver" in addition to the waiver regarding the ability to tax the property, and such a waiver did not exist in 12 U.S.C. § 1706b. *Richland,* 500 F.Supp. at 315. Accordingly, the district court ruled in favor of the United States, holding that "Once the United States acquired an interest in or a lien upon the real estate, such interest or lien could not be extinguished except by proceeding under § 2410."[10] *Id.* at 316.

Purchaser asserts that *Richland* is distinguishable from the present case. Purchaser contends that, unlike 12 U.S.C. § 1706(b), which made HUD responsible for the payment of real estate taxes on property it owned but did not include statutory language that allowed for the sale of the property for delinquent taxes, the plain language of 38 U.S.C. § 3720(a)(6) gives state and local entities the right and authority to impose real estate taxes *and* to take the property to sale for nonpayment. According to Purchaser, "[t]he pertinent part of the statute involved, 38 U.S.C. § 3720(a)(6), states that no state or political subdivision shall be deprived of its ability to tax property held by the Secretary of Veteran Affairs *and that their rights under state or local law shall not be impaired.*" (Purchaser's brief at 4, emphasis added.) Purchaser reasons that, because the Tax Claim Bureau's rights would be impaired if it could not sell V.A.-owned property to collect taxes in the same way that it can against all other taxpayers under the Law, Congress has expressly waived sovereign immunity to allow for such sales.[11]

9. That section provides that, "Nothing in this subchapter shall be construed to exempt any real property acquired and held by the Secretary in connection with the payment of insurance heretofore or hereafter granted under this subchapter from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed." 12 U.S.C. § 1706b.

10. Similarly, in *Kasdon v. G.W. Zierden Landscaping, Inc.,* 541 F.Supp. 991 (D.Md.1982), *aff'd sub nom Kasdon v. United States,* 707 F.2d 820 (4th Cir.1983), the United States District Court for the District of Maryland held that a tax sale of property upon which the United States held one or more tax liens was invalid. Viewing the cases as involving foreclosure actions, the court held, "they may not pass the barrier of sovereign immunity asserted by the United States unless each of

the tax sales conducted ... is a 'judicial sale' as those two words are used in 28 U.S.C. § 2410(c)." *Id.* at 996. Because, under Maryland law, the tax sale conducted was not a *judicial* sale, the court held that the United States could assert sovereign immunity. *Compare Dansby* (upholding an Ohio *judicial* foreclosure proceeding to enforce a county tax lien that extinguished a junior choate federal lien against the property).

11. Purchaser also notes that the right to redeem property provided for in 28 U.S.C. § 2410(c), "shall not arise in any case in which the subordinate lien or interest of the United States derives from a guaranteed or insured loan," 38 U.S.C. § 3720(d), and argues that this express language supports the position that the V.A. can lose property in a tax sale. Purchaser reasons that, if the legis-

Purchaser's argument might succeed if his recitation of 38 U.S.C. § 3720(a)(6) were accurate. However, that section does *not* guarantee that all rights of *states and political subdivisions* will remain unimpaired when the V.A. has acquired property. Rather, the statute provides that, in such cases, states and their political subdivisions retain jurisdiction over such property, including power to tax, and that the acquisition will not *"impair the rights under the State or local law **of any persons on such property.**"* 38 U.S.C. 3720(a)(6). (Emphasis added.)

In *United States v. Lewis County,* 175 F.3d 671 (9th Cir.), *cert. denied,* 528 U.S. 1018, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999), the federal government brought an action against Lewis County challenging the county's assessment of taxes, interest and penalties on property acquired by the federal Farm Service Agency (FSA) and the county's foreclosure on one FSA-owned parcel. The United States Court of Appeals for the Ninth Circuit examined 7 U.S.C. § 1984 and determined that, while its provisions waive the immunity of the federal government from taxation by authorizing state and local governments to tax property held by the FSA "in the same manner and to the same extent as other property is taxed," the federal government's waiver of immunity did not extend to interest, penalties or foreclosure. In so holding, the court noted that the United States Supreme Court has repeatedly held that waivers of sovereign immunity must be strictly construed in favor of the sovereign, *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), and, therefore, Congress must express such consent *unequivocally. Lewis County,* 175 F.3d at 677. Applying that principle, the court determined that the language of 7·U.S.C. § 1984 could not be accepted as an *unequivocal* waiver of immunity of the United States from foreclosure of its property by the county even if the county's ability to collect its tax was impaired thereby. *Lewis County.*

■ Similarly, the language of 38 U.S.C. § 3720(a)(6) does not provide unequivocal consent to a tax claim bureau to divest the V.A. of its property through an upset tax sale. Indeed, we note that, pursuant to 38 U.S.C. § 3720(a)(5), Congress specifically authorizes the V.A. to purchase and take title to property, *and to sell or otherwise dispose of any such acquired property,* notwithstanding the provisions of any other law. That is precisely what the V.A. did here.

Purchaser's reliance on *United States v. Marion County,* 826 F.Supp. 1400 (M.D.Fla.1993), to support his position that the United States has waived sovereign immunity in upset tax sales of property titled to the V.A. is misplaced. *Marion County* is a lien priority case, in which the District Court for the Middle District of Florida held that, because the V.A. lending program was a "form of social welfare," *Id.* at 1402, that did not entitle the V.A. to any special protection in a priority dispute between a V.A. lien and a local tax lien, Florida state law would be applied to determine which lien took precedence.[12] The

lature had intended that the V.A. could not lose property through tax sales, it would have had no need to address the right to redeem lost property. (Purchaser's brief at 4.) However, the right to redemption in 28 U.S.C. § 2410(c) goes only to redemption after a *judicial* sale. 28 U.S.C. § 2410(c); *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960) (stating that, if a judicial sale under 28 U.S.C. § 2410 is con-

ducted, it is to have the same effect as it would have under local law, but the government is guaranteed a one-year right to redeem). Thus, 38 U.S.C. § 3720(d) does nothing to advance Purchaser's argument with respect to upset tax sales.

**12.** In *Marion County,* the V.A. held a purchase money mortgage against property, and, after the taxes became delinquent, a third

**1278**

district court relied on another lien priority case, *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), wherein the United States Supreme Court held that, absent a congressional directive, the relative priority of private and consensual liens created by federal lending programs is to be determined by nondiscriminatory state laws. The district court in *Marion County* found that incorporating state law to determine rights of the United States against private creditors would not hinder administration of the V.A. loan programs. In doing so, the district court noted that when the United States acts as a lender, it does so voluntarily and, thus, is in substantially the same position as private lenders, so that the special status it seeks is unnecessary to guard the public fisc. *Marion County.* The same rationale cannot be applied in the present case because the V.A., rather than being a lien holder, has title to the Property.

This distinction was made clear in *Secretary of Housing and Urban Development v. Sky Meadow Association,* 117 F.Supp.2d 970 (C.D.Cal.2000), a case in which HUD brought an action to quiet title in property that it acquired under the Single Family Mortgage Insurance Program. HUD failed to pay the homeowner association assessment dues to Sky Meadow, and Sky Meadow proceeded to expose the property for a private non-judicial foreclosure sale. The United States District Court for the Central District of California considered the validity of a non-judicial foreclosure by a private party to

sell property owned by the United States to satisfy a debt that it admittedly owed. In granting HUD's motion for summary judgment, the district court noted that HUD's negligent failure to pay the fees does not justify or validate a non-judicial foreclosure sale of property owned by the United States. Further, the court rejected the idea that by adopting 38 U.S.C. § 3720(a)(1), Congress intended to sanction the use of state non-judicial foreclosure proceedings to sell property owned by HUD. *Sky Meadow.*

Throughout the opinion in *Sky Meadow,* the district court distinguished between lien priority cases, where state law may be used as the federal rule of decision in determining whether the federal government's interest in its property could be subordinated or extinguished, *Kimbell; United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), and cases where the concern is the role of the United States as a property owner. The court held that, in the latter circumstance, application of a uniform federal law is needed. *Sky Meadow* (citing *Lewis County*). The district court observed that federal land is to be treated differently than land held by private individuals, even when the federal government holds the land in the same capacity as an individual. Property owned by the United States, for reasons of public policy, "cannot be seized by authority of another sovereignty against the consent of the government." *Armstrong v. United States,* 364 U.S. 40, 43, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). Con-

party paid the tax and obtained a tax certificate against the property, which, under Florida law is superior to all other liens. After two years, the holder of such a tax certificate may request the property be sold at a tax sale; however, any owner or lien creditor may redeem before the sale. If not redeemed, the property is sold at auction, and the deed issued divests lien holders. It is noteworthy

that, in Pennsylvania, this occurs only by a judicial sale. 72 P.S. § 5860.610; *Bell v. Berks County Tax Claim Bureau,* 832 A.2d 587 (Pa.Cmwlth.2003) (stating that, in a judicial sale under section 610 of the Law, property is sold by court order free of all liens and encumbrances, whereas in an upset tax sale under section 601 of the Law, property is sold subject to all unpaid taxes, liens and costs).

gress has not provided that unequivocal consent through 38 U.S.C. § 3720(a)(6).

Accordingly, we reverse.

## ORDER

AND NOW, this 24th day of July, 2009, the order of the Court of Common Pleas of Delaware County, dated September 24, 2007, is hereby reversed.